**HARLEYSVILLE MUTUAL INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania, Plaintiff,**

v.

**FIVE POINTS FIRE CO. NO. 1, INC., a corporation of the State of Delaware, Maxim Industries, Inc., a corporation of the State of Delaware, Michael Ross and Robert L. Younker, Jr., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted March 2, 1982.

Decided April 12, 1982.

Marcia Rees, (argued), of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

A. Gary Wilson, (argued), Wilmington, for defendant Five Points Fire Co. No. 1, Inc.

Alan T. Boyd, (argued), of Bayard, Brill & Handelman, Wilmington, for defendant Michael Ross.

O'HARA, Judge.

This is a declaratory judgment action seeking to relieve plaintiff, Harleysville Mutual Insurance Company ("Harleysville"), from providing coverage for or defending defendant, Five Points Fire Co. No. 1, Inc. ("Five Points"), in its underlying, pending, personal injury and/or property damage actions, because the claims are allegedly excluded from the terms of the insurance policies in issue. This Court disagrees and finds for defendant.

After filing this declaratory judgment complaint, plaintiff filed the present motion for declaratory judgment pursuant to Superior Court Civil Rule 57. In conjunction with the previously filed claim for declaratory relief, this motion is, in effect, a motion for declaratory summary judgment. The same basic principles that govern the grant of summary judgment apply to the grant of a motion for summary judgment on a claim for declaratory relief or a motion for declaratory summary judgment.

The underlying actions are the result of an accident that occurred on September 21, 1977, when the extension ladder on Five Points' Maxim aerial truck collapsed during a training exercise of the fire company, injuring two members of this volunteer fire company, Michael Ross ("Ross") and Robert L. Younker, Jr. ("Younker"). Ross and Younker brought suit against the manufacturer of the aerial truck, Maxim Industries, Inc. ("Maxim"), which, in turn, filed a third-party complaint for contribution and/or in-

demnification against Five Points. Five Points then filed a counterclaim against Maxim for damage to its fire apparatus. Harleysville is presently defending Five Points in the action brought by Maxim pursuant to a non-waiver agreement executed on November 2, 1978. In June and September, 1979, Ross and Younker brought direct claims against Five Points, but these claims were not part of the previous nonwaiver agreement. It is unclear from the record whether Harleysville is also defending Five Points in these direct claims.

Effective April 18, 1977, Five Points purchased three insurance policies from Harleysville. They provided as follows: 1) Policy No. GA–OT–53–21, comprehensive automobile liability insurance, uninsured motorist insurance and automobile physical damage insurance (non-fleet); 2) Policy No. SMP–OT–53–21, special multi-peril liability insurance; and 3) Policy No. BEC–OT–53–21, blanket excess liability insurance. Each of the aforesaid policies was in force at the time of the accident and each names Five Points Fire Co. No. 1, Inc., Ladies Auxiliary of Five Points Fire Co. No. 1, Inc. and Ambulance Club of Five Points Fire Co. No. 1, Inc. as the insured.

Of these three policies, the only one in question, according to the declaratory judgment complaint, is Policy No. GA–OT–53–21, the policy providing comprehensive automobile liability insurance. This policy excludes coverage for any bodily injury to any "employee" arising out of or in the course of his employment by the insured. It also excludes any coverage for property damage if the damage was "due and confined to . . . mechanical or electrical breakdown or failure." In reliance on these two exclusions, Harleysville asks that this Court declare that it has no obligation to provide coverage or defend Five Points because the claim is excluded under the above questioned insurance policy.

Harleysville claims that Ross and Younker, as volunteer firemen, should be deemed "employees" of Five Points, within the meaning of Policy No. GA–OT–53–21, and, therefore, are covered by the employee exclusion of that policy.

Harleysville concedes that the policy in issue does not specifically define volunteer firemen as employees, that no Delaware statute requires that they be viewed as employees, and that no Delaware case law has decided this issue. Furthermore, Harleysville admits that the general rule is that contracts of insurance are strictly construed against the insurer and ambiguities in the contract are to be resolved in favor of the insured. *Hallowell, et al. v. State Farm Mutual Automobile Insurance Company*, Del.Supr., 443 A.2d 925 (Duffy, J., 1982). However, while Harleysville impliedly concedes ambiguity in the policy it, nevertheless, contends that three factors compel a construction of the policy in its favor, i.e., that these volunteer firemen should be deemed employees of Five Points. The factors are: 1) the use of the word "employees" in the Delaware Workmen's Compensation Statute; 2) the common law definition of "employees"; and 3) the intention of the parties to exclude volunteer firemen from the policy. These factors will be discussed seriatim.

The Delaware Workmen's Compensation Statute (19 *Del.C.* Ch. 23) defines "employee", in pertinent part, as follows:

"(8) 'Employee' means every person in service of any corporation (private, public, municipal or quasi-public), association, firm or person, *excepting those employees excluded by this subchapter, under any contract of hire*, express or implied, oral or written, or *performing services for a valuable consideration* . . . " 19 *Del.C.* § 2301(8). (Emphasis added).

The volunteer firemen in this case clearly do not fall under this definition of "employee." There exists no contractual arrangement between Five Points and its volunteer firemen members, and the services performed by these firemen are purely voluntary with no expectation of "valuable consideration." In *Gooden v. Mitchell*, Del.Super., 21 A.2d 197 (1941), this Court found that "[a] volunteer rendering a gratuitous service would not come within the contemplation of the 'Workmen's Compensation Act.'"

In addition to this definition of "employee", the statute specifically allows "any duly organized volunteer fire company" to "elect to be bound by the compensatory provisions" of the Workmen's Compensation law.[1] Harleysville suggests that this election process implies that the General Assembly considers volunteer firemen "employees." The Court concludes to the contrary. It would appear from the enactment of this statute that the General Assembly, in fact, recognized that volunteer firemen were not employees, under the Workmen's Compensation Statute, and decided to make a specific provision for coverage for these volunteers if the majority of the members of the fire company voted to be bound by the compensatory provisions of the statute.

Harleysville's reliance on *Riviera Beach Vol. F. Co. Inc. v. Fidelity & C. Co. of N.Y.*, D.C.Md., 388 F.Supp. 1114 (1975) adds nothing to its argument. In *Riviera*, the Court held that since volunteer firemen were specifically deemed to be workmen for wages or employees under the Maryland Workmen's Compensation Statute, it would consider them employees for purposes of the insurance contract in issue. As previously stated, Delaware's Workmen's Compensation Statute does not include volunteer firemen within its general definition of "employees."

No Delaware decisions apparently deal directly with the common law rules relating to master and servant as they might pertain to volunteers. The two cases relied upon by Harleysville, *Lester C. Newton Trucking Company v. Neal,* Del.Supr., 204 A.2d 393 (1964) and *White v. Gulf Oil Corp.*, Del.Super., 406 A.2d 48 (1979), are both decisions under the Workmen's Compensation Law and deal with a different issue, namely, which one of two potential employers can be considered as the employer under the Act in question. However, both cases do recognize that there are certain factors, under common law, which are usually considered in trying to determine whether or not an employee/employer relationship exists. These factors are 1) who hired the employee; 2) who may discharge the employee; 3) who pays the employee's wages; and, finally, 4) who has power to control the conduct of the employee. In Workmen's Compensation cases, according to these two decisions, the power to control the conduct of the employee is paramount but, of course, the other factors were also present in those two cases. In the situation here presented, while Five Points may have had the power to control the conduct of the volunteer firemen, there, nevertheless, was no hiring arrangement or contract between the parties, no authority to fire and the volunteer firemen were not paid wages. Volunteer firemen may be agents of a fire company for some purposes but they are not employees within any acceptable common law definition.

Harleysville finally urges that the intention of the parties was that the volunteer firemen be considered as employees and that this should control. Here, Harleysville points to the preprinted policy, which contained an employee exclusion. Five Points not having any paid employees, the parties must have intended, Harleysville argues, that these volunteer firemen be deemed "employees" under the policy. The Court finds this argument unpersuasive. Furthermore, it could lead to inequitable results when dealing with preprinted form contracts (i.e., adhesion contracts).

Any insurance contract should be interpreted in accord with the reasonable expectations of the purchaser, to the extent the policy language permits. *Hallowell, et al. v. State Farm Mutual Insurance Company,* supra; *Steigler v. Insurance Co. of North America,* Del.Supr., 384 A.2d 398 (1978). On the same day the policy in question here became effective, a special multi-peril liability policy, Policy No. SMP–OT–53–21, between Five Points and Harleysville also became effective. Policy No. SMP–OT–53–21 excluded from coverage, by endorsement, bodily injury to any volunteer fireman, whether or not a member of

---

1. For whatever reason, Five Points had chosen, at the time of the accident, not to be bound by the compensation provisions in the Workmen's Compensation Statute.

the named insured's organization, while in the course of his duties as such. Thus it would appear that Harleysville, itself, recognized that volunteer firemen have a special status. No similar endorsement was received by Five Points as to the policy in issue. The absence of such an endorsement may mean either that the parties intended to include the volunteer firemen within the policy or that the parties thought the exclusion was already covered under the "employee" exclusion. Neither party has come forth with affidavits as to their intent at the time the policy was drawn up nor is the record otherwise helpful. Therefore, the Court cannot declare, as a matter of law or within the meaning and intent of the insurance contract, that volunteer firemen are "employees" under the questioned policy.

Should the Court not deem Ross and Younker "employees" under the policy, Harleysville, alternatively, argues that they should be found to be "insured" through their membership in Five Points. The policy very specifically defines "named insured" as "the person or organization named in item 1 of the declarations of this policy." The only persons or organizations named it item 1 of the declaration page are: Five Points Fire Co. # 1, Inc., Ladies Aux. of Five Points Fire Co. # 1, Inc., Ambulance Club of Five Points Fire Co. # 1, Inc. No individuals, including Ross and Younkers, are listed on item 1.

Under Delaware law, Five Points is a non-profit corporation. Just as with a corporation for profit, this means that Five Points is a distinct legal entity, and as such was one of the "named insured." The members of a volunteer fire company may be equated to the stockholders of a corporation. When a corporation is listed as a "named insured" on an insurance policy, this does not mean that each and every stockholder is also a "named insured." The same is true in our present situation. The clear, unambiguous language of the policy indicates that Ross and Younker are not "named insured" under Policy No. GA–OT–53–21.

Harleysville's final argument is that it should be relieved from providing coverage to or defending Five Points in the property damage suit against Maxim because the damage to the fire truck was the result of mechanical failure and falls under the property damage exclusion. The policy specifically excludes any coverage for property damage if the damage was "due and confined to . . . mechanical or electrical breakdown or failure."

The suits filed by Ross and Younker against Maxim are product liability actions, alleging that the collapse of the ladder was due to a mechanical breakdown or failure as a result of structural or design defects. Maxim's third-party complaint against Five Points alleges that the injuries were caused by Five Points' negligence in that it failed to properly train its volunteers and failed to properly operate and maintain the equipment. Five Points then counterclaimed against Maxim alleging that the equipment failed due to negligence in its manufacture and in the initial course of instruction given to Five Points by Maxim. Thus, one of the key issues in the pending actions is whether the damage to the aerial truck was caused by mechanical failure or breakdown, or due to the negligence of Five Points.

Harleysville maintains that regardless of whether Five Points is found negligent or the equipment is found to have been defective, the injuries ultimately resulted from the breakdown of the ladder and is excluded from coverage, citing *Little Judy Industries, Inc. v. Federal Insurance Co.*, Fla.App., 280 So.2d 14 (1973), *cert. den.* Fla., 284 So.2d 220 (1973). Under an exclusionary clause similar to the one in issue, the Florida Court found that even though the mechanical failure could be attributed to improper or negligent work on the airplane engine, it was still ultimately a mechanical failure which fell under the exclusionary provision. On the other hand, other cases hold that where negligent maintenance or operation of equipment results in its mechanical breakdown, the breakdown is the mere effect, rather than the cause of the loss, and find the policy exclusion inap-

plicable. *Connie's Const. v. Continental W. Ins.*, Iowa, 227 N.W.2d 204 (1975); *Rust Tractor Co. v. Consolidated Constructors, Inc.*, N.M.App., 526 P.2d 800 (1974). There is no doubt that the equipment ultimately broke and hurt Ross and Younker. At issue is what caused the equipment to break. There is insufficient evidence at this point for the Court to find, as a matter of law, that the injuries were due and *confined* to mechanical breakdown or failure. Since this is one of the major issues in the pending cases, Harleysville cannot be relieved from providing coverage to or defending Five Points in these pending actions.

For the foregoing reasons, Harleysville's motion for declaratory judgment in its favor should be denied.

IT IS SO ORDERED.