LESTER C. NEWTON TRUCKING COMPANY, Appellant, v. SADIE D. NEAL, DELMAR FEED MILLS, INC. and C. F. SCHWARTZ, INC., Appellees.

(*October* 20, 1964)

WOLCOTTandCAREY,JJ., and SHORT, Vice Chancellor, sitting.

*David Snellenburg, II,* of Killoran & Van Brunt, for appellant.

*F. Alton Tybout,* for Delmar and Schwartz.

Supreme Court of Delaware, No. 57-1964.

WOLCOTT, Justice.

This is an appeal from a judgment of the Superior Court approving an award of compensation by the Industrial Accident Board for the death of James R. Neal, a truck driver.

The sole issue presented by the appeal is, Who was Neal's employer at the time of his death?

The Industrial Accident Board found that Lester C. Newton Trucking Company (hereafter Newton) was the decedent's employer at the time he met his death and, thus, liable to pay compensation under the Act. (19 *Del. C.,* Ch. 21). On appeal to the Superior Court this finding was affirmed. Newton appeals to this Court.

The truck involved in the accident was owned by Delmar Feed Mills, Inc. (hereafter Delmar) which had permanently leased it together with all necessary equipment and a driver to C. J. Schwartz, Inc. (hereafter Schwartz). The compensation of the driver, Neal, was paid by Delmar and consisted of a percentage of the freight rates charged Schwartz under the permanent lease agreement.

Under the arrangement between Delmar and Schwartz, Delmar's truck was kept by Neal in his possession except for the time it was undergoing necessary repairs. When Schwartz required the truck it notified Neal who would report with the truck to designated pickup locations to receive cargo. He would thereafter deliver the cargo to such points as Schwartz designated.

With respect to the direction of Neal's activities while driving the truck, Delmar had nothing to say, although if it had become necessary to discharge Neal that would have been done by Delmar upon the direction of Schwartz. Delmar's function under the lease was to supply a truck and a driver to Schwartz.

Schwartz possessed an I.C.C. franchise under the terms of which it was necessary to use only trucks belonging to or under lease to Schwartz. I.C.C. regulations prevented Schwartz from permitting its franchise to be used by any other vehicle.

Newton is an interstate shipper and possesses an I.C.C. franchise for a route which commences at the terminus of the Schwartz route. Newton under I.C.C. regulations could not permit the use of its franchise by trucks other than those owned by it or under lease to it.

Accordingly, Newton and Schwartz engaged in a practice known as "interlining" under which one truck is used to travel over two or more I.C.C. franchises through use of short-term leases between the franchise owners. There was, accordingly, a Master Interchange Agreement existing between Schwartz and Newton. Such a written agreement had not been executed by reason of a disagreement between Schwartz and Newton as to a hold-harmless provision. All other

provisions of the proposed agreement, however, the record demonstrates, were in effect and governed the interlining arrangement between Schwartz and Newton.

*Inter alia,* such agreement provided that the receiving carrier—in the case at bar, Newton—would have complete control and supervision of the equipment and the driver operating the equipment.

The respective franchises of Schwartz and Newton abutted at approximately Camden, Delaware, and at that point Newton had retained an agent for the purpose of inspecting the vehicle to be leased by Schwartz to Newton in order to determine compliance with I.C.C. regulations, including the condition of the driver at the time.

Under these circumstances, the Industrial Accident Board held that Newton was Neal's employer at the time of his death and was therefore liable to pay compensation by reason of his death.

The sole question before us is the narrow one of who was Neal's employer when he met his death, there being no question at all but that his employer, whoever it is, is liable for the payment of compensation.

Initially, we note that our function, sitting in review of the Superior Court, which in turn has sat in review of the action of the Industrial Accident Board, is merely to determine whether or not the record made before the Industrial Accident Board supports with substantial fact its conclusions with respect thereto. *General Motors Corp. v. Freeman,* 3 Storey 74, 164 A.2d 686. If such is the case then we have no choice but to affirm.

Ordinarily there are four elements which may be taken into consideration in answering the question of whether or not the relationship of employer and employee exists. These are (1) who hired the employee; (2) who may discharge the employee; (3) who pays the employee's wages, and (4) who has the power to control the conduct of the employee when he is performing the particular job in question. *Sun Cab Co. v. Powell,* 196 Md. 572, 77 A.2d 783; 35 Am.Jur., Master &

Servant, Sec. 3.

In the case at bar the record establishes as fact that Delmar hired Neal and paid him his wages; that Delmar would be the party to discharge Neal if the occasion arose, but only upon the recommendation of Schwartz; and that the control of Neal's conduct in the performance of his job lay with Schwartz when the truck was operating under its franchise, and lay with Newton when the truck was operating under its franchise. We think the record permits no other conclusion.

The case, therefore, is one in which no one possible employer of Neal discharged all four functions which are the usual tests of the existence of the relationship of employer-employee. They are discharged by different possible employers depending upon the precise circumstances of time and place. Since it is obvious that Neal was the employee of one of the three defendants, since he was not an independent contractor, *Gooden v. Mitchell,* 2 Terry 301, 21 A.2d 197, the question of which one of the three was his employer at the time and place of his death is to be answered by the conclusion of which in the circumstance of a division of functions between possible employers is of overriding importance.

We think the question is governed by our decision in *Richardson v. John T. Hardy & Sons, Inc.,* Del., 182 A.2d 901. While this case was an action for damages resulting from negligence, nevertheless the fundamental question raised was that of who was the tort-feasor's employer. We think the nature of the action does not change the general principles governing this question.

In the Richardson case we pointed out that whether or not an employer-employee relationship exists is always determined by the particular facts and circumstances of the case, but that in the last analysis the question is almost exclusively determined by the fact of which possible employer has the right to control and direct the activities of the employee in the performance of the act which caused his injury. This conclusion, we think, is almost uniformly the test

applied in other jurisdictions. See, e. g., *Wall v. Penn Lumber & Mill Works,* 171 Pa.Super. 512, 90 A.2d 273; *Roth v. McCord* and Delinger et al., 232 N.C. 678, 679, 62 S.E.2d 64; *Fransen Construction Co. v. Industrial Commission,* 384 Ill. 616, 52 N.E. 2d 241; *Daniels v. Terminal Transp. Co.,* 125 Ind. App. 28, 119 N.E. 2d 554, and *Bobock v. Industrial Commission,* 146 Ohio St. 187, 64 N.E.2d 829.

We have no doubt from the record made before the Industrial Accident Board that after the interchange point had been reached and Delmar's truck transferred under the short-term lease by Schwartz to Newton, that thereafter Newton had the right to control and direct the activities of Neal in the performance of the activity for which the truck had been leased. Indeed, the Master Interchange Agreement existing between Schwartz and Newton is quite definite in this respect.

The test being the right to control, it makes little difference whether or not that right has actually been exercised. *Gooden v. Mitchell,* supra. From the existence of the right to control springs the employer-employee relationship. In the record before us there is substantial evidence that Newton possessed the right to control Neal. Under the circumstances, therefore, we think the Industrial Accident Board relied upon substantial evidence in holding that Neal was Newton's employee.

The judgment below is accordingly affirmed.