**Benjamin S. DICKINSON and Bettye J. Dickinson, his wife, and Liberty Mutual Insurance Company, Plaintiffs, Appellants,**

v.

**EASTERN RAILROAD BUILDERS, INC., Defendant, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 11, 1979.

Decided May 24, 1979.

William J. Alsentzer, Jr., of Bayard, Brill & Handelman, P. A., Wilmington, for plaintiffs, appellants.

William F. Taylor and Richard H. Morse, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant, appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice:

Under the Delaware Workmen's Compensation Act, an employee injured in an industrial accident has a right to compensation benefits from his employer, but is barred from suing the employer for damages resulting from the accident. 19 *Del.C.* § 2304. The critical question in this appeal is whether there was an employer-employee relationship between the principal parties. The Superior Court determined that there was and ordered summary judgment for the employer because the employee's exclusive remedy is under the Compensation Act. We reverse.

I

Benjamin S. Dickinson (plaintiff) is an operator of heavy construction equipment. While he was operating a front-end loader at a construction site, he sustained a whiplash injury which caused extensive and permanent damage. The details of the accident and the conditions of Dickinson's employment are the essence of the case.

The accident occurred at the DuPont Company plant in Seaford; general construction on the premises was the responsibility of the firm of Healy-DiSabatino, Joint Venture.[1] Construction included the installation of a railroad track which Eastern Railroad Builders, Inc. (defendant) had contracted to place in position. Brandywine Construction Co. (Brandywine) had a subcontract with Eastern to do excavation and grading in connection with emplacement of the track. It was understood between Eastern and Brandywine that the latter would furnish to Eastern heavy equipment or heavy equipment operators, or both, for use in connection with the track construction.

Dickinson was employed by Brandywine out of local Union # 542 of the International Union of Operating Engineers. He worked at the Seaford site for Brandywine and, after most of its work had been completed, he was instructed by Brandywine to remain at the site and take orders from Eastern's supervisory personnel. Dickinson did so and for approximately four months he was the only Brandywine employee at the site.

The accident occurred when Eastern's foreman directed Dickinson to ram a rail with a front-end loader in order to move it. The front-end loader was owned by East-

---

1. Neither the DuPont Company nor Healy-DiSabatino is a party to this suit.

ern. The collision of loader and rail, i. e., the "ramming" caused plaintiff's injury.[2]

Dickinson received compensation benefits from Brandywine's insurer. He, his wife and Brandywine's insurer, Liberty Mutual Insurance Company, then joined in this negligence action against Eastern. The carrier's claim, of course, is based on its subrogation rights. 19 *Del.C.* § 2363. On cross-motions for summary judgment, the Superior Court determined that "[a]ll of the mechanical manifestations of employment showing an employee-employer relationship between plaintiff and Brandywine are present and conversely they are absent between plaintiff and Eastern." Specifically, the Trial Judge found that:

"1. Brandywine hired plaintiff through the Union hiring procedure and he was recorded on Union records as being employed by Brandywine.

2. Plaintiff was maintained on Brandywine records as its employee.

3. He was paid by Brandywine.

4. Payroll deductions were made by Brandywine.

5. The required income tax and other forms and reports showed this.

6. When the accident occurred, Brandywine filed the appropriate reports and not Eastern.

7. Workmen's compensation was paid to plaintiff by Brandywine's carrier and not by Eastern.

8. Plaintiff was doing this work because Brandywine had directed him to do it.

9. Plaintiff was doing this because of an arrangement between Brandywine and Eastern to which plaintiff was not a party."

The Trial Judge, however, concluded that he was bound by this Court's opinion in *Lester C. Newton Trucking Co. v. Neal,* Del.Supr., 204 A.2d 393 (1964), and granted summary judgment to Eastern. The Court reasoned that Eastern had exclusive control over Dickinson's day-to-day work and, therefore, *Neal* required a determination that Dickinson was in Eastern's employ for compensation purposes. Dickinson, his wife and Liberty Mutual then docketed this appeal.

II

There are a number of reported Delaware opinions which are relevant here. See, e. g., *Richardson v. John T. Hardy & Sons, Inc.,* Del.Supr., 182 A.2d 901 (1962), which preceded *Neal,* and *Loden v. Getty Oil Co.,* Del.Super., 316 A.2d 214, aff'd Del.Supr., 326 A.2d 868 (1974), which followed it. In general, the principles of the law of master and servant have been applied to give meaning to a concept not otherwise defined in the Workmen's Compensation Act.

*Richardson* involved a claim by an employee of a plumbing contractor against a company from which it had rented a backhoe (with an operator). That was not a

2. The complaint alleges that:

"The defendant [Eastern] was negligent and the negligence of the defendant was the proximate cause of the injuries of plaintiff Benjamin S. Dickinson in that:

a) The defendant permitted its supervisors to issue orders for moving railroad rails with the use of a front end loader when it knew or should have known that permitting such action would involve an unreasonable risk of harm to persons such as the plaintiff who would be likely to encounter such risk upon the instruction of its supervisors without otherwise being protected therefrom.

b) The defendant failed to exercise reasonable and prudent care to determine the nature of the instructions given by its supervisors with respect to the manner in which railroad rails were being moved.

c) The defendant's supervisor imprudently instructed the plaintiff to move a railroad rail with the use of a front end loader when he knew or should have known that such action involved an unreasonable risk of harm to the plaintiff and that the plaintiff would be likely to encounter such risk without otherwise being protected therefrom.

d) The defendant failed to furnish the plaintiff with safe working conditions and/or with the proper equipment for moving railroad rails.

e) The defendant imprudently chose to move secured railroad rails with a front end loader without loosening the pins which secured them and/ or removing the same."

Compensation case but this Court relied on it in deciding *Neal*. The injury occurred when a trench collapsed on the employee. Judgment was given for the backhoe owner because the plumbing contractor had the right to control and direct the act (excavation and stockpiling of the dirt) which allegedly caused the injury.

In *Neal*, the question was which of three possible employers was liable for the compensation owed to a deceased truck driver. Neal had been hired and paid by Delmar Feed Mills, Inc. Delmar, however, had permanently leased the truck and Neal's services as driver to C. F. Schwartz, Inc., a shipping concern. Schwartz participated with another shipper, Lester C. Newton Trucking Co., in an "interline" agreement, under the terms of which Schwartz leased the Delmar truck and Neal's services as driver to Newton for use in areas where Newton, but not Schwartz, was an authorized I.C.C. carrier. The interline agreement provided that Newton would have complete control and supervision over the truck and the driver while operating in its territory. Neal was killed while operating the truck under Newton's supervision.

The Industrial Accident Board determined that Newton was liable for Neal's compensation. The Superior Court affirmed, as did this Court. It was noted that four factors determine the existence of the employment relationship, namely:

1. Who hired the employee.
2. Who had power to discharge him.
3. Who paid his wages.
4. Who had the right to control his conduct while he was performing the particular work in question.

204 *A.2d* at 395. In *Neal*, no one of the parties met all tests and, in that circumstance, Newton was found to be liable for Neal's compensation. The Court said that:

".  .  . whether or not an employer-employee relationship exists is always determined by the particular facts and circumstances of the case, but .  .  . in the last analysis the question is almost exclusively determined by the fact of which possible employer has the right to control and direct the activities of the employee in the performance of the act which caused his injury."

204 *A.2d* at 395.

*Loden* arose in a different context. There, as in the case at bar, the issue arose on a motion for summary judgment on the ground that a common law suit was barred by 19 *Del.C.* § 2304. The deceased employee, Loden, had been employed by Catalytic Construction Co., which had a contract with Getty Oil Co. to perform maintenance and construction work at Getty's refinery near Delaware City. All of the incidents of the employment relationship, including the right to control Loden's day-to-day activities, were found to exist between Loden and . Catalytic. Therefore, Getty's motion for summary judgment on the ground that it was Loden's employer was denied.

It should be noted that, in affirming the order of the Trial Court in *Loden*, we specifically left open the question of whether 19 *Del.C.* § 2311 applied. 326 A.2d at 868. It was unnecessary to consider such question in that case and we have not found a Delaware case applying § 2311 to facts comparable to those presented in the case at bar. But § 2311 is, we think, determinative of this appeal.

### III

19 *Del.C.* § 2311 provides in pertinent part as follows:

"No .  .  . subcontractor shall receive compensation under this chapter, but shall be deemed to be an employer and all rights of compensation of the employees of any such .  .  . subcontractor shall be against their employer and not against any other employer."

By enacting (and continuing) § 2311, the General Assembly has departed from the typical Workmen's Compensation statute. In the great majority of States, the Compensation Act contains what is commonly known as a "contractor under" clause. For a thorough discussion of such a provision in compensation law, see 1B *Larson, The Law of Workmen's Compensation* § 49 (1978). Generally, such a statute imposes liability

on a general contractor for the compensation of employees of subcontractors under him—a concept which is directly contrary to the Delaware law assigning "all rights of compensation of the employees of" a subcontractor against that subcontractor and "not against any other employer."

▰ The nature of the legal relationship between a job-injured employee and the person for whom he is "working" at the time cannot always be identified with litmus-like precision. As Judge Taylor has pointed out, the circumstances vary so much that a universal, judge-made formula is impractical: the employee who works for intermittent employers, cf. *Gooden v. Mitchell,* Del.Super., 21 A.2d 197 (1941), or who is loaned by one employer to another, cf. *Faircloth v. Rash,* Del.Supr., 317 A.2d 871 (1974), are illustrations of this. For this reason, the test for the employer-employee relationship is ordinarily a factual one. See *Neal, supra,* 204 A.2d at 395.

We regard § 2311 as a legislative effort, in the circumstances specified therein, to cut through the multi-employer situation and to assign responsibility under the Compensation Act to a single employer. In situations in which a hierarchy of employers has many employees working at a single job site, an employee may follow instructions from several employers at about the same time, and the "right to control" test is difficult to apply. Section 2311 seeks to impose some certainty on the situation by fixing liability for compensation on an employee's immediate employer. Its application, however, is statutorily limited to situations in which there is, between persons who might otherwise be regarded as employers, the relationship of contractor and subcontractor. If there is such a relationship, the statutory policy assigns all rights of compensation of an employee of a subcontractor to that subcontractor "and not against any other employer."

▰ The significant consequence of this is that the *Richardson-Neal-Loden* test,

based on "right to control and direct the activities of the employee in the performance of the act which caused his injury," 204 A.2d at 395, does not apply. In other words, if there is a contractor-subcontractor relationship on the employer side of the controversy, that is the critical consideration under the statute. It is, of course, necessary that other elements of a master-servant relationship, cf. 53 *Am.Jur.2d,* Master and Servant § 2 (1970), must be proved to establish the existence of such relationship between a plaintiff-employee and the subcontractor.

While our application of § 2311 may appear to require a different test than this Court adopted in *Neal* and *Loden,* those cases are factually different in one significant respect: all involved contractual relationships on the employer side of the controversy, but none involved contractor-*subcontractor* relationship on that side. And under § 2311, that is determinative.

### IV

Turning to the record in this case, Dickinson alleges that Brandywine was a subcontractor on the project upon which Eastern was building a railroad spur. And in an answer to an interrogatory Eastern conceded that Brandywine "held subcontract from Eastern." [3]

▰ Brandywine had subcontracted to perform the excavation and grading incident to the track installation. We have held that, under § 2311, Brandywine is "deemed" to be the employer of all of its employees working on the subcontract, and the right of those employees to compensation is against their statutory employer, i. e., Brandywine, and not Eastern. Because Brandywine alone is responsible for the compensation of its employees working on or under the subcontract, the inevitable corollary is that it alone is immune from common law suit.

As we have noted in discussing the facts, Dickinson was the only Brandywine em-

---

3. A "subcontractor" is "one who has entered into a contract . . . for the performance of an act with the person who has already

contracted for its performance." *Black's Law Dictionary* (4th ed. 1968). See 40 *Words and Phrases* (perm. ed.) p. 520, etc.

ployee at the site for some four months. The Trial Court did not make any finding as to his status during that period. If he was working on or under subcontract, then, § 2311 and our ruling herein applied: Brandywine was the employer for compensation purposes. If Dickinson was working on some other basis, a different rule may be applied. Since the necessary determination has not been made by the Superior Court, it follows that the judgment must be reversed and the case remanded for proceedings consistent herewith.