James FARRALL and Leota Farrall, his wife, Plaintiffs,

v.

ARMSTRONG CORK COMPANY, Atlas Asbestos Corporation, a subsidiary and/or division of Bell Asbestos Mines, Ltd., and Gale Corporation, Defendants.

ARMSTRONG CORK COMPANY and Gale Corporation, Third Party Plaintiffs,

v.

A.C. & S., INC., Catalytic, Inc. and Babcock & Wilcox, et al., Third Party Defendants.

Superior Court of Delaware, New Castle County.

Submitted: Nov. 3, 1982.

Decided: Jan. 7, 1983.

On Motion for Reargument: Jan. 28, 1983.

James T. McKinstry of Richards, Layton & Finger, Wilmington, for third party plaintiff Armstrong Cork Co.

Phebe S. Young of Bayard, Brill & Handelman, P.A., Wilmington, for third party plaintiff Gale Corp. .

Samuel R. Russell, J. Michael Johnson of Biggs & Battaglia, Wilmington, for third party defendant AC & S, Inc.

Dennis D. Ferri of Becker & Ferri, P.A., Wilmington, for third party defendant Catalytic, Inc.

Stuart B. Young of Young, Conaway, Stargatt & Taylor, Wilmington, for third party defendant Babcock & Wilcox.

WALSH, Judge.

In this products liability action a former asbestos worker seeks recovery for certain pulmonary ailments he sustained as the result of his alleged exposure to asbestos products manufactured or distributed by the primary defendants, Keene Corporation, Armstrong Cork Company, Atlas Asbestos Corporation and Gale Corporation. Plaintiff's wife also seeks recovery, derivatively for loss of consortium and directly for alleged asbestos contamination as a result of handling her husband's clothing. Two of the primary defendants, Gale and Armstrong, have joined as third-party defendants a number of additional manufacturers and distributors of asbestos material whose products may have come into contact with the husband-plaintiff during his work life, as well as three entities which employed him. These former employers, Armstrong Contracting & Supply Corp. (AC & S), Catalytic, Inc. (Catalytic) and Babcock and Wilcox Company (Babcock) have moved for summary judgment on the ground that any claim for contribution or indemnification is barred by the exclusive remedy provision of the Delaware Workmen's Compensation Act.[1]

The basic facts underlying plaintiff's employment history are not in serious dispute but to the extent that inferences are contested, the benefit flows to the non-movants. From 1962 to 1971, when his condition was diagnosed, plaintiff, a member of Local 42, Heat, Frost and Asbestos Workers, was hired by five separate employers to perform certain tasks which involved the handling of pipe coverings and sprays containing asbestos. While in the employ of AC & S, plaintiff presumably used asbestos products manufactured by AC & S. In that respect AC & S occupied a dual role—that of employer-supplier. Catalytic and Babcock, however, stood solely in an employer relationship to plaintiff. It was while he was employed by Allied Insulation Company, his last employer and a non-party, that plaintiff's condition was discovered. He sought and received workmen's compensation benefits from Allied for a disabling occupational disease.

---

1. 19 *Del.C.* § 2304 provides:
 Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

In essence, the movant-employers argue that as predecessor employers in the employment chain they share the same immunity from common law tort actions as Allied, the employer who actually responded to the workmen's compensation claim. To the contrary, Gale and Armstrong contend that immunity from suit extends only to the employer who actually pays benefits. They also argue that AC & S cannot claim immunity because of its dual capacity as a employer-supplier of asbestos products. Finally, they argue that the exclusive remedy of workmen's compensation cannot bar Mrs. Farrall's direct claim for damages. These contentions will be separately considered.

## I

It is settled Delaware law that an alleged tortfeasor responding to a claim by an injured employee may not seek contribution from an employer if the employee-plaintiff could not have sued the employer directly because of the exclusivity of the workmen's compensation remedy. *Diamond State Tel. Co. v. University of Delaware,* Del.Supr., 269 A.2d 52 (1970); *Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226 (1982); *Howard, Needles, Tammen & B. v. Steers, Perini & P.,* Del.Supr., 312 A.2d 621 (1973); *see also, SW (Delaware), Inc. v. American Consumers, Etc.,* Del. Supr., 450 A.2d 887, 888 N. 1 (1982).

However, third party actions against employers may be sustained on a contractual, as distinct from a tort, theory of recovery based on express or implied indemnification. *Diamond State, supra.* See 2A Larson, Workmen's Compensation Law § 76.40 and 76.50 (1982). Since the third party complaints in this case do not assert an indemnification relationship, their validity must be tested by traditional considerations which govern tortfeasor contribution.

Armstrong and Gale do not seriously dispute the statutorily conferred immunity enjoyed by the employer who actually pays workmen's compensation benefits, here Allied. They argue, however, that prior employers should not share immunity from contribution if they have not responded to a compensation claim despite the employee's exposure to the occupational hazard during their respective periods of employment.

The Delaware Workmen's Compensation Act does not address the question of successive employment although it does contemplate situations in which an injury, or its effect, may extend beyond a single employment. Thus, under 19 *Del.C.* § 2354 an employee in the "joint," *i.e.* contemporaneous, service of two or more employers is entitled to benefits which are apportioned among the various employers in accordance with their respective wage liability. Section 2327 of the Act provides, in part, for the apportioning of compensation for a "subsequent permanent injury" sustained by an employee who had previously sustained a permanent injury, "from any cause" between the employer and the Second Injury Fund, if the subsequent injury results in total disability.

The exclusivity of workmen's compensation remedy in a successive employer context was the subject of an earlier ruling by this Court in another asbestos case. *Lee v. A.C. & S., et al.,* 79C–DE–125 (Unreported Decision, September 25, 1981). In *Lee,* the estate of a deceased insulation worker attempted to bring a direct wrongful death action against several employers for whom the deceased had worked during his lifetime. The argument was there asserted that only the last employer, who responded to the workmen's compensation claim, should enjoy immunity from suit. This Court held that the express immunity granted by § 2304 extended to every employer. The rationale for this ruling expressed in *Lee* bears repeating:

> The employee's remedy is deemed exclusive because it is part of the *quid pro quo* which the employee has exchanged for the coverage extended by each employer during the course of the employment relationship. When so viewed, the immunity of a particular employer does not depend on whether it responds to a claim at any particular time, so long as

an entitlement to full compensation benefits is available through the response of one or more employers in the chain of employment. In essence, the adequacy of the remedy depends on the availability of complete benefits, not on the number of employers who respond.

■ In Delaware, as in most states, the employer's participation in the workmen's compensation process is statutorily required (19 *Del.C.* § 2306). The employer may provide benefits either directly as a self insurer (§ 2373), or through an approved compensation liability insurance carrier (§ 2372). The immunity from common law suits, which inures also to the benefit of co-employees, flows from such participation and does not depend on the actual receipt of benefits. *Walker v. Patterson*, D.Del., 325 F.Supp. 1024 (1971). The Act creates a "status oriented" relationship. *Price v. All American Engineering Company*, Del.Supr., 320 A.2d 336, 339 (1974). It is the relationship which imparts the statutory immunity. Under the comparable Pennsylvania Act it has been held that the employer's immunity is not contingent upon liability under the compensation act and such protection exists even where the employer has successfully defended a claim for compensation. *Ryden v. Johns-Manville Products*, W.D.Pa., 518 F.Supp. 311 (1981); *Shultz v. Bell & Howard*, W.D.Pa., 512 F.Supp. 558 (1981).

Analogous to the problem of successive employers is that of successive carriers. Again the Act is silent on the question of whether multiple compensation carriers may be required to share responsibility for the payment of benefits where the disability arose over a period of time during which successive carriers were on the risk. In *Alloy Surfaces Co. v. Cicamore*, Del.Supr., 221 A.2d 480 (1966), the Supreme Court aligned itself with the majority rule that the last carrier must bear the entire burden of compensation and not seek to apportion benefit responsibility among prior carriers.

The policy considerations which support the ruling in *Cicamore* apply with equal force to limiting compensation liability to the last employer, without consequent loss of immunity on the part of prior employers. In cases of occupational diseases which may develop over a long period of time through a succession of employers the fixing of proportionate liability may prove difficult, if not impossible. The triggering of attempted claims against prior employers usually occurs through the employee's common law action against third parties. As a result many claims against former employers may be time-barred. Employers participate in the workmen's compensation scheme, and procure insurance to implement such participation, with knowledge of the statutorily fixed benefits which they will be required to pay as the result of their individual activities. To permit that participation to be revised long after the period of employment has ended would introduce a chaotic result. Finally, if the employer is subject to claims "arising out of employment" long after the employment has ended it may find itself without liability coverage. The workmen's compensation carrier then on the risk can decline coverage under the *Cicamore* holding while the general public liability carrier then on the risk might properly decline coverage because the claim arose in a workmen's compensation context.

In urging that employer immunity should be limited to the employer who actually provides benefits, Armstrong argues that the question should be controlled by the rationale in *Dickinson v. Eastern R.R. Builder, Inc.*, Del.Supr., 403 A.2d 717 (1979). In *Dickinson*, the Court refused to extend immunity to a contractor sued by an injured employee of a subcontractor where the subcontractor's carrier had provided workmen's compensation benefits. The Court based its ruling upon the automatic effect of 19 *Del.C.* § 2311 in all contractor-subcontractor situations. Since the statute limits the designation of "employer" to the subcontractor, the Court ruled that as an "inevitable corollary * * * it alone is immune from common law suit." (403 A.2d 721)

*Dickinson,* of course, did not involve successive employers but contemporaneous employers. More to the point, the application of the statute (§ 2311) resulted in the contractor being determined not an "employer" at all, within the meaning of the Workmen's Compensation Act. In short, the Court in *Dickinson* simply determined that without the employer-employee relationship there is no immunity from common law suit. Here, each of the prior employers in Farrall's chain of employment stood in a definite employer relationship with statutory responsibilities to provide compensation to him had the disability arisen during the period of such employment.

A further anomaly would result if prior employers were subject to contribution at the behest of third parties sued by an injured employee. Under 19 *Del.C.* § 2363, the employer, or its carrier paying compensation, is subrogated to the right of the injured employee to recover from a third party causing injury to the extent of any benefits paid the employee. This right of subrogation may be pursued independently if the employee fails to assert a claim. In any event, the employer or carrier may seek recovery of all compensation benefits paid to the employee. If, as is here asserted, primary defendants can, in turn, require contribution from prior employers or carriers, the last carrier rule announced in *Cicamore* would be negated since the last carrier, through subrogation, would be able to seek contribution from prior carriers.

The most telling barrier to permitting contribution from prior employers lies in the language of the statute upon which contribution is sought. The Delaware Uniform Contribution Among Tort-Feasors Act (10 *Del.C.* § 6301 *et seq.*) requires as a premise to its application the sharing of a common liability to the plaintiff. *Lutz v. Boltz,* Del.Super., 100 A.2d 647 (1953). Joint or several negligence will not suffice to impose contribution under the Act if the legal relationship between the plaintiff and all defendants against whom contribution is asserted is not the same. *Walker v. Patter-son, supra.* Here the former employers share no common liability with any primary defendant.

In sum, the immunity from common law suit imparted by § 2304 extends to each employer in the chain of employment whether or not such employer has responded to a claim for benefits. As Farrall's prior employers, Catalytic and Babcock share that immunity and are not subject to a claim for contribution under the Uniform Contribution Among Joint-Tortfeasors Act. Summary judgment in their favor is granted.

II

To the extent that contribution is sought from AC & S as a former employer, it too is entitled to immunity. But the third party plaintiffs contend that their claim for contribution against AC & S is directed to its dual status—an employer who also is a supplier of asbestos products for use by its employees. This argument also raises an issue of first impression in this State—whether an employer who functions in a dual capacity also enjoys the immunity from common law suit which flows from the exclusivity of the workmen's compensation remedy.

In the majority of jurisdictions which have considered the question, it has been held that the employer who is also the manufacturer, installer or distributor of the product used by the injured employee is not subject to a common law suit either by the employee directly or by a third party seeking contribution. *Mapson v. Montgomery White Trucks, Inc.,* Ala.Supr., 357 So.2d 971 (1978); *Vineyard v. Southwest Engineering and Contracting,* Ariz.App., 117 Ariz. 52, 570 P.2d 823 (1977). *Goetz v. Avildsen Tool & Machines, Inc.,* Ill.App., 82 Ill.App.3d 1054, 38 Ill.Dec. 324, 403 N.E.2d 555 (1980); *Longever v. Revere Copper & Brass, Inc.,* Mass.Supr., 381 Mass. 221, 408 N.E.2d 857 (1980). These decisions are grounded upon a common principle—that the furnishing of tools, equipment and other devices necessary to perform assigned work is an inte-

gral part of the employment function. While the employee may be deemed a user or consumer of his employer's product he is only incidentally so. Whatever duty is owed him in the form of furnishing a safe work environment is discharged through the workmen's compensation process. The employer's separate duty to manufacture a safe product is so "braided together" with his duty as an employer as to defy separation. 2A Larson Workmen's Compensation, § 72–83 p. 14–245 (1982).

Third party plaintiffs rely upon two decisions which support a direct product liability claim by an employee.[2] *Douglas v. E. & J. Gallo Winery,* Cal.App., 69 Cal.App.3d 103, 137 Cal.Rptr. 797 (1977) (employee injured on a scaffold manufactured by employer); *Mercer v. Uniroyal, Inc.,* Ohio App., 49 Ohio App.2d 279, 361 N.E.2d 492 (1976) (employee injured in truck accident caused by defective tire manufactured by employer). Both decisions carve an exception to the exclusivity principle by applying a test of whether the product which caused the injury was intended for sale to the general public or for limited use by employees. Professor Larson refers to these holdings as a "distortion" of the concept of independent employer responsibility. 2A Larson Workmen's Compensation § 72.83, p. 14–245. As the textwriter notes, the public distribution test focuses upon the problem from the wrong end. If the product is furnished as an integral part of the employment the fact of general distribution, with separate duties imposed by law, does not change the relationship of employer and employee.

The majority view rejecting the dual capacity doctrine is clearly the better rea-

soned. The dual capacity doctrine followed in *Douglas* and *Mercer, supra,* is of limited application. From a practical standpoint, the attempt to fix separate employer responsibility in occupational diseases of prolonged duration is a far more complex undertaking than gauging the employer's liability for a single incident. Any attempt to engraft such a concept on the statutory scheme for workmen's compensation should be legislatively, not judicially, determined. *Kofron v. Amoco Chemical Corp.,* Del.Supr., 441 A.2d 226 (1982).

I conclude that the dual capacity doctrine may not form the basis for assertion of common law liability by an injured employee against prior employers. It follows, under the principles of tortfeasor contribution already considered, that an employer is equally immune from an attempt by a third party to require contribution of the employer. AC & S's motion for summary judgment is granted with respect to any claim for contribution based on its employer relationship with Farrall.

■ While AC & S's entitlement to summary judgment on the contribution claims asserted against it as an employer is clear, there remains unresolved the question of whether it is subject to contribution for its role as a supplier. Gale contends that Farrall, while employed by Catalytic in 1968, used certain asbestos material distributed by AC & S. Thus Gale seeks contribution from AC & S as a co-supplier. AC & S contends that the discovery record thus far developed fails to reflect the use of its products by Farrall at any time he was not in its employ.

---

**2.** Third party plaintiffs also rely upon a recent Pennsylvania decision in support of their dual capacity argument. In *Tatrai v. Presbyterian University Hospital,* Pa.Supr., 497 A.2d 247, 439 A.2d 1162 (1982), the Court rejected the employer's claim of exclusivity and permitted a hospital employee to sue for damages sustained when she fell from an examining table in the emergency room of the hospital where she went for treatment after becoming ill during working hours. The principal opinion of the

Court found the compensation remedy not applicable because the injury did not arise within the course of employment while the concurring opinion held that at the time of injury the employee was a paying customer and entitled to the same duty of care as any other patient so situated. The decision refutes rather than supports the dual capacity assertion since the premise underlying both opinions is that a compensable injury did not arise within the employer-employee relationship.

Despite a lengthy briefing extension to enable it to pursue additional discovery, Gale has been unable to establish any direct evidence that Farrall used AC & S asbestos products in other employment. Apparently one delivery of an AC & S product (Armaflex insulation) was made by an intermediary supplier, Baldwin-Ehret Hill, to Catalytic at Decatur, Alabama, shortly before Farrall completed his work with Catalytic at the Getty refinery in Delaware City. There is no evidence that such material was actually used by the plaintiff during his employment at Getty. Additionally, AC & S has submitted persuasive evidence that Armaflex does not contain asbestos.

Gale seeks a further opportunity to develop discovery in the area but is unable to point to any avenue of discovery which might establish the link between AC & S as a supplier and plaintiff's exposure to asbestos. As the party resisting summary judgment, Gale is entitled to the benefit of all reasonable inferences. But the motion must be decided on the record which exists not on the mere possibility that unspecified further discovery areas will provide such inferences. *Rochester v. Katalan,* Del. Supr., 320 A.2d 704 (1974); *Phillips v. Delaware Power and Light Company,* Del.Supr., 216 A.2d 281 (1966).

I conclude that there is no material issue of fact concerning the plaintiff's use of any asbestos product supplied by AC & S while not in its employ. In the absence of a causal connection between the product and the condition, AC & S is entitled to summary judgment in its favor as a supplier.

■ In a further effort to ensnarl AC & S in its contribution net, Gale relies upon the conspiracy allegations made by plaintiffs in their Third Amended Complaint against all defendants and third party defendants. The nub of this conspiracy claim is that all manufacturers and suppliers of asbestos engaged in a conspiracy to suppress medical data regarding the hazards of asbestos. This industry-wide conspiracy allegation is common to asbestos cases. To the extent that the conspiracy charge is directed against employer-defendants, including AC & S, it is barred by the exclusivity principle already considered. *Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226 (1982); *Lee v. AC & S, Inc., supra.* To the extent the conspiracy charge is based on AC & S's role as a supplier generally, it lacks the required nexus of exposure. As indicated above, there is no direct evidence that Farrall was exposed to any asbestos product supplied by AC & S during the course of his work history with any other employer. In the absence of such evidence, any general conspiratorial claims lack the necessary causal connection for tort contribution.

### III

There remains for consideration the contribution claims which arise from the causes of action asserted by Mrs. Farrall against the primary defendants. These claims fall in three categories: (1) loss of her husband's consortium; (2) mental anguish in witnessing his suffering during the progression of his occupational disease and (3) being placed in a "high-risk" category for contracting asbestos related cancer as the result of handling her husband's asbestos laden clothing. Again, the employer defendants argue that they are not subject to tort contribution because such claims are not directly sustainable against them.

■ Mrs. Farrall's claim for loss of consortium is solely a derivative one, *i.e.,* she may recover damages only if her husband's claim for physical injury is a valid one. *Stenta v. Leblang,* Del.Supr., 185 A.2d 759 (1962); *Folk v. York-Shipley, Inc.,* Del. Supr., 239 A.2d 236 (1968). The derivative nature of the wife's cause of action has resulted in the barring of a claim for loss of consortium where the spouse's exclusive remedy against the employer is workmen's compensation. *Holder v. Elms Hotel Co.,* Mo.Supr., 338 Mo. 857, 92 S.W.2d 620 (1936); *Danek v. Hommer,* N.J.Supr., 9 N.J. 56, 87 A.2d 5 (1952); *Smither and Company, Inc. v. Coles,* D.C.Cir., 242 F.2d 220 (1957), cert. den. 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d

1429; *England v. Dana Corporation,* 7th Cir., 428 F.2d 385 (1970); *Dawn v. Essex Conveyors, Inc.,* E.D.Tenn., 379 F.Supp. 1342 (1973); *aff'd.* 498 F.2d 921, *cert. den.* 419 U.S. 1040, 95 S.Ct. 528, 42 L.Ed.2d 317 (barring a third-party claim against employer for worker's and spouse's claims).

Since Mrs. Farrall's claim for loss of consortium must stand on the merits of her husband's entitlement to sue his employer directly or through contribution, it is not sustainable against any of his former employers. Summary judgment in their favor must follow.

■ The remaining claims of Mrs. Farrall, for which contribution is sought, are directed solely against AC & S in its supplier role. As direct claims which arise independently of her husband's employment status their fate is not determined by workmen's compensation principles but by application of tort law. Mrs. Farrall's claim of mental suffering as a result of witnessing her husband's suffering is of questionable validity under Delaware, if she was, in fact, outside the scope of danger. *Mancino v. Webb,* Del.Super., 274 A.2d 711 (1971); *Robb v. Pennsylvania Railroad Company,* Del.Supr., 210 A.2d 709 (1965). And her claim of being placed in a high risk category with respect to contracting future ailments poses a novel medical-legal question which, on the present limited record, cannot be resolved. But a more fundamental concern suggests that the validity of Mrs. Farrall's direct claims not be considered in the context of these pending motions. Counsel for the Farralls has not participated in the briefing or argument of these motions. The merit of Mrs. Farrall's claim is advanced by Gale, as a third party plaintiff seeking contribution. A ruling adverse to Mrs. Farrall on the theory that her direct claims are not legally cognizable in contribution may well lead to a further motion by the primary defendants that the same claims be dismissed as to them. If the legal merit of those claims is to be resolved it should be through a true adversarial test and not at the behest of a primary defend-

ant seeking contribution. As a minimum, Mrs. Farrall is entitled to notice and reasonable opportunity to present material in support of her position before summary judgment is granted. *Cf. Bryson v. Brand Industries, Inc.,* 3rd Cir., 621 F.2d 556 (1980). Under these unusual circumstances and in the exercise of discretion, summary judgment should not be granted as to this aspect of claimed contribution. *Cross v. Hair,* Del. Supr., 258 A.2d 277 (1969).

In summary, I conclude that summary judgment should be granted in full with respect to all claims for contribution asserted against Catalytic and Babcock & Wilcox by the third party plaintiffs. Partial summary judgment is granted in favor of AC & S with respect to all claims for contribution which: (a) arise from its status as a former employer of Farrall, (b) are based on its role as a supplier or supplier/employer and (c) are based on Mrs. Farrall's claim for loss of consortium. Summary judgment is denied with respect to the third party complaint for contribution for Mrs. Farrall's direct claims, without prejudice to a renewal of the motion upon notice to her and enlargement of the record.

IT IS SO ORDERED.

## ON MOTION FOR REARGUMENT

Armstrong has moved for reargument with respect to that portion of the principal decision which grants complete summary judgment to Babcock and Catalytic as to the direct claims of Mrs. Farrall. While not conceding the correctness of the ruling, Armstrong does not seek further review of the disposition of Mrs. Farrall's derivative claim. It contends, however, that to the extent the record precludes an adjudication of the merits of Mrs. Farrall's direct claims for mental anguish and exposure to asbestos asserted against AC & S as an employer-supplier, it also precludes the grant of summary judgment in favor of the employers who have been charged with injury to Mrs. Farrall through "lack of supervision and training." Babcock and Catalytic, in reply to the motion for reargument, con-

tend that whatever duty existed on their part arose in the employment relationship and is thus barred by exclusivity interpretation of 19 *Del.C.* § 2304.

I am frank to say that the distinction now being asserted was not evident in the briefing, which was somewhat disjointed. The wife's direct claims were discussed in terms of the "zone of danger" test announced in *Robb v. Pennsylvania Railroad Company,* Del.Supr., 210 A.2d 709 (1965), a standard of doubtful assistance in the consideration of claims arising out of extended exposure to industrial products. Again, this is probably the result of the third-party plaintiffs acting as surrogates in the assertion of the plaintiffs' claims. But the exchange of positions on the motion for reargument have persuaded me that the scope of the ruling in favor of Babcock and Catalytic was too broadly stated.

 Section 2304, under any interpretation, can bar only the claims of an employee, or of a spouse whose entitlement is solely derivative. If the spouse's claim is a direct one, *i.e.,* one which may be asserted whether or not the employee can recover, it is controlled by common law tort considerations. While the precise legal theory under-

lying such claims has not been finely drawn, it is at least conceivable that Mrs. Farrall's complaint (reasserted against the third-party defendants) states a cause of action. At this juncture she is entitled to the benefit of that inference. Questions of foreseeability and the exact scope of an employer's duty to family members or other persons who come into contact with the asbestos-laden employee cannot be resolved on this limited record.

I am persuaded, therefore, that the grant of summary judgment in favor of Babcock and Catalytic should be restricted to the direct claims of Mr. Farrall and the derivative claims of Mrs. Farrall. An adjudication of the "mental anguish" and "high risk through exposure" claims should await a later determination on the same basis as that required of AC & S. To that extent the principal decision is deemed modified.

IT IS SO ORDERED.