Earl R. NUTT, et al., Plaintiffs,

v.

A.C. & S., INC., et al., Defendants.

George R. RICKARDS, et al., Plaintiffs,

v.

A.C. & S., INC., et al., Defendants.

Charles MERGENTHALER, et al., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERI-CA, INC., et al., Defendants.

Randolph PANNELL, et al., Plaintiffs,

v.

ASBESTOS CORPORATION OF AMERI-CA, INC., et al., Defendants.

Superior Court of Delaware,
In and For New Castle County.

Submitted: April 15, 1983.
Decided: Aug. 23, 1983.

**20**

Robert Jacobs, and Thomas C. Crumplar, (argued) of Jacobs & Crumplar, Wilmington and William J. Wier, Jr., (argued) of Kreshtool, Wier & Waserstein, Wilmington, for plaintiffs.

Mary Pat Trostle, (argued) of Biggs & Battaglia, Wilmington, for defendants Haveg Industries and Hercules, Inc.

James W. Semple, (argued) of Morris, James, Hitchens & Williams, Wilmington, for defendants Pittsburgh Corning Corp. and Herty Foundation.

Catherine B. Hagerty, Rick A. Harrington, and Edward W. Schall, of E.I. du Pont de Nemours and Company, Wilmington and Thomas L. Morrissey, (argued) of Carpenter, Bennett & Morrissey, Newark, N.J., of counsel, for defendant E.I. du Pont de Nemours and Co.

Jeffrey S. Marlin, of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant Southern Textile.

Douglas B. Catts, of Schmittinger & Rodriguez, Dover, for defendant Celotex Corp.

Roger A. Akin, of H. Murray Sawyer, Jr., P.A., Wilmington, for defendant Pacor, Inc.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, for defendant Owens-Corning Fiberglas Corp.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendants Fibreboard Corp. and Hollingsworth & Vose Co.

Richard P.S. Hannum, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants Keene Corp. and Gale Corp.

Samuel R. Russell, of Biggs & Battaglia, Wilmington, for defendant A. C. & S., Inc.

Howard M. Berg, of Howard M. Berg & Associates, P.A., Wilmington, for defendant Nicolet, Inc.

J.R. Julian, of J.R. Julian Professional Association, Wilmington, for defendant GAF Corp.

Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Lake Asbestos of Quebec, Ltd.

John C. Phillips, Jr., Wilmington, for defendants Mead Paper Specialty and Powhatan Mining Co.

WALSH, Judge.

These four cases have been consolidated for the purpose of deciding certain common issues. They involve claims by present or former asbestos workers and their spouses against employers and third parties who allegedly supplied asbestos products to which the plaintiff employees were exposed during the course of their employment. The employer-defendants, E.I. du Pont de Nemours and Company (du Pont) and Haveg Industries, Inc. (Haveg) have moved to dismiss the amended complaints of their respective employees on the ground that the claims asserted are not cognizable under Delaware law. The remaining defendants who are manufacturers, processors or suppliers of asbestos products have also moved to dismiss certain of the amended claims. For convenience these defendants will be referred to as the "supplier-defendants," although it is recognized that their roles in the asbestos field may encompass other activities. Each of the supplier-defendants has adopted the briefing position asserted by one of their number, Pittsburg Corning Corporation.

The claims here under attack essentially fall within two categories: (1) the loss of causes of action against third parties because of concealment of asbestos hazards and (2) the claims of the wives of asbestos workers for mental anguish and loss of consortium. Because the legal significance of these claims differ between the employer-defendants and the supplier-defendants they will be separately addressed.

I

While the language of the various complaints varies, in essence the plaintiff-employees charge that the defendants, both employers and suppliers, misled them into believing that it was safe to work in close proximity to asbestos materials; suppressed information of the danger of such exposure and failed to provide protective devices and medical monitoring. The losses which plaintiffs allege result from such acts of omission and commission by du Pont are set forth in identical language in Count IV of the *Nutt* complaint and Count V of *Rickards*:

29. Paragraphs 1 through 28 are incorporated herein by reference.

30. As a result of the described wrongful conduct by all defendants, including E.I. DuPont, plaintiffs have lost their rights to pursue an action for breach of warranty under § 2–313, 314, 315 and 318 of Title VI of the Delaware Code.

31. As a further result of the wrongful conduct by all the defendants, including E.I. DuPont, plaintiffs have lost their rights to pursue an action for personal injuries against various health care providers.

Claims against Haveg, set forth in the amended *Mergenthaler* and *Pannell* complaints are cast in similar language.

The employer-defendants argue that the exclusive remedy of workmen's compensation is a bar to any tort claim which has its basis in the employment giving rise to it.[1] Plaintiffs maintain that their claim for lost causes of action is based on the deceit of the employers and gives rise to a separate tort claim.

In *Kofron v. Amoco Chemicals Corp.*, Del. Supr., 441 A.2d 226 (1982), the scope of the exclusive remedy bar to employment related asbestos claims was broadly stated. It was there held that all acts of an employer, of whatever degree of negligence or intentional misconduct, fall within the exclusivi-

---

1. 19 *Del.C.* § 2304 provides:
 Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

ty bar. One of the instant cases, *Nutt v. A.C. & S., et al.,* was a companion case to *Kofron* and was the subject of a specific holding to the effect that the alleged intentional acts of du Pont as an employer, in concealing known asbestos hazards, was also immune to common law suit. The "lost causes of action" claims in *Nutt* were added to the complaint by amendment after the Supreme Court's ruling.

 Decisions in which the shield of employer immunity has been pierced are helpful in illustrating the type of employer activity which supports a common law tort action. Thus, a separate tort claim is sustainable against an employer who seeks, through collusion with an insurance carrier, to prevent the employee from pursuing a workmen's compensation claim. *See e.g., Broaddus v. Ferndale Fastener Division,* Mich.App., 84 Mich.App. 593, 269 N.W.2d 689 (1978); *Ramey v. General Petroleum Corporation,* Cal.App., 173 Cal.App.2d 386, 343 P.2d 787 (1959). But, as was noted in *Broaddus,* the claim is limited to the emotional and mental distress occasioned by the wrongful conduct and not the physical injuries which were the basis for the underlying workmen's compensation claim. If the action is essentially a recovery for physical injury, it is barred, even if cast in the form of non-physical tort. 2A Larson, Workmen's Compensation Law, § 68.34(a), pp. 13.61–13.62. Similarly, if the emotional distress is simply a component of an underlying physical injury it would be recoverable only in connection with the workmen's compensation claim. A pure non-physical tort, however, could be the basis for a separate tort claim. *Battista v. Chrysler Corp.,* Del. Super., 454 A.2d 286 (1982) (defamation); *Pirocchi v. Liberty Mutual Insurance Co.,* E.D.Pa., 365 F.Supp. 277 (1973) (destruction of evidence).

 Apart from the effect of the deceit, a further distinction exists with respect to the time of the alleged deceit. If the fraud, such as concealment of the hazards of the workplace, occurs before the physical injury, the deceit is deemed to have merged with the circumstances of employment and be actionable only through workmen's compensation. *Gambrell v. Kan. City Chiefs Football Club,* Mo.App., 562 S.W.2d 163 (1978); *Foley v. Polaroid Corp.,* Mass.Supr., 381 Mass. 545, 413 N.E.2d 711 (1980).

 The causes of action allegedly lost by the plaintiff-employees against health care providers presumably involves the rendering of medical care for illnesses which were asbestos related. Similarly, the lost claims of breach of warranty involve the same physical ailments for which workmen's compensation benefits were available. Since entitlement to workmen's compensation benefits arises at the time the occupational disease is manifested regardless of exposure, *Alloy Surfaces Company v. Cicamore,* Del.Supr., 221 A.2d 480 (1966), the employers' duty to respond through workmen's compensation is later than, or contemporaneous with, the alleged acts of deceit concealing their cause. In essence, the knowledge of the diseases and the right to invoke the remedy of workmen's compensation post-dates whatever fraud is alleged to have occurred. For recovery purposes then, the antecedent deceitful acts of the employer are deemed merged in the recovery afforded by the workmen's compensation remedy. As Chancellor Brown noted in his concurring opinion in *Kofron,* the effort of asbestos employees to circumvent the exclusive remedy feature of the Delaware Workmen's Compensation Act by attempting to distinguish between the "manner in which the occupational disease was caused" and "the fact that it was incurred during the course of employment" assumes a statutory exception that does not exist and which can be created only at the legislative level. (441 A.2d 232 and 233).

 As a corollary of *Kofron,* it must be concluded that fraud or deceit on the part of any employer, which occurs prior to the manifestation of the injury or disease and which prevents the employee from filing claims against third parties for the same physical injuries or disease giving rise to a

claim for workmen's compensation, is not separately actionable. Accordingly, the motion of du Pont and Haveg to dismiss the claim for lost causes of action must be granted.

The plaintiff-employees claim for lost causes of action based on fraud which has been asserted against the supplier-defendants is more difficult to resolve. While the nature of the relationship permits the application of clearly defined legal principles to the employers' motion, the allegations of fraud against the supplier-defendants cannot be easily resolved. The initial problem is one of understanding. As Pittsburgh Corning points out, the allegations of fraud are cast in broad and general language, contrary to Superior Court Civil Rule 9(b) which requires allegations of fraud to be made with particularity.

Fraud must be pled with sufficient particularity so that the parties may know what claims have been adjudicated. If a pleading is so vague or ambiguous as to make it difficult for a defendant to frame a responsive pleading, a more definite statement is required. *Twin Coach Company v. Chance Vought Aircraft, Inc.,* Del.Super., 163 A.2d 278 (1960); *Strasburger v. Mars, Inc.,* Del.Super., 83 A.2d 101 (1951).

The "circumstances" which must be stated with particularity under Rule 9(b) refer to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Autrey v. Chemtrust Industries Corporation,* D.Del., 362 F.Supp. 1085, 1092, 1093 (1973); 5 Wright and Miller, *Federal Practice and Procedure* § 1297 at p. 403 (1969). Allegations based on information and belief will not satisfy the Rule. 2A Moore's Federal Practice, Chap. 9–23 (2d Ed.1982).

Because the claim of fraud, if established, may result in an award of punitive damages it is important that the supplier-defendants be provided with the specifics of the alleged conduct. The amended complaints are lacking in dates of when the

alleged misrepresentations occurred; when the harm was discovered; which third parties would have incurred liability to the plaintiffs but for the fraud and, with respect to the lost claims against health care providers, what medical-related information was concealed. It may not be necessary that all evidence of fraud within the knowledge of the plaintiffs be disclosed short of discovery but it is essential that the precise theory of fraud with supporting specifics appear in the complaint. Under the most indulgent test of pleading sufficiency, these complaints fail.

In view of inability of the supplier-defendants to frame an appropriate answer to the fraud allegations, I am unable to address the question of whether such claims are cognizable, although I assume that such causes of action, if properly pleaded, are sustainable. Nonetheless, since the amended complaints are clearly deficient under the Rule 9(b) standard they must be dismissed with leave to further amend in compliance with the Rule.

## II

The second prong of defendants' motion to dismiss is directed to certain claims asserted by the plaintiff-wives who seek recovery for loss of consortium and for mental anguish as a result of witnessing their husbands' illness and for what they have described as "the reasonable apprehension" that they will suffer asbestos-related illnesses as the result of contact with asbestos fibers "brought home by their husbands." The employer-defendants assert that none of these claims is legally sustainable against them, while the supplier-defendants argue that the mental anguish claims fail to state a cause of action.

The effort of the employer-defendants to secure dismissal of the consortium claims finds direct support in a recent decision of this Court which addressed the same issue in an asbestos case. In *Farrall v. Armstrong Cork Co.,* Del.Super., 457 A.2d 763 (1983), it was determined that a wife's

claim for loss of consortium against an employer is a derivative one and must stand on the merits of her husband's entitlement to sue. To the extent that workmen's compensation provides an exclusive remedy for the employee's claim for personal injury it presents an equal bar to a spouse's claim which is dependent upon it. The consortium claims here asserted against the employer-defendants, including those by widows of deceased employees, fall squarely within the holding in *Farrall.* The motions to dismiss those claims must be granted.

Next to be considered are the mental anguish claims which are asserted by the plaintiff-wives against both classes of defendants. Unlike the consortium claims, these causes of action are directly asserted and seek recovery for the mental anguish which these wives contend they have sustained. These claims present issues of first impression in Delaware although both were advanced in *Farrall* by certain supplier-defendants acting as third party plaintiffs in an effort to require participation by third party employer-defendants. Because of the meager record there presented and because the wife-plaintiffs did not participate in the briefing in *Farrall,* I declined to decide whether such claims were cognizable. The direct participation of the wives in these consolidated motions now permits a definitive ruling.

The claims of mental anguish asserted by the plaintiff-wives are alleged in the amended complaints in broad and general language but are actually of two distinct types: mental anguish resulting from witnessing of the physical ailments of a spouse and the mental anguish resulting from one's own apprehension of risk of illness. Although similar in origin in the sense that each type of claim stems from contact with an asbestos worker (and thus are one step removed from direct contact with the defendants), the legal efficacy of each must be tested by different legal standards.

The standard for recovery for mental anguish resulting from the witnessing of an accident was established in *Robb v. Pennsylvania Railroad Company,* Del.Supr., 210 A.2d 709 (1965) which rejected the impact rule for bystander recovery. *Robb* adopted a "zone of danger" test but did not address the question of recovery by one who witnesses the suffering of another but is not in the path of danger. Indeed, the Court noted that while the unreported decision in *Williamson v. Wilmington Housing Authority,* (Superior Court of New Castle County, No. 1627 C.A.1960), disallowed such a claim, the final determination of that "interesting" question remains "for another day" (210 A.2d 710).[2]

Even in jurisdictions which have abolished the zone of danger requirement, there is a requirement that the mental distress be attributable to a specific accident or event. See, *e.g., Sinn v. Burd,* Pa.Supr., 486 Pa. 146, 404 A.2d 672 (1979). What is the injurious event which the plaintiff-wives witnessed? There is an ongoing dispute in the field of asbestosis litigation concerning whether claims for asbestos caused ailments arise during exposure or upon clinical manifestation. The competing views are illustrated in two federal appellate decisions. In *Keene Corp. v. Ins. Co. of North America,* D.C.Cir., 667 F.2d 1034 (1981), *cert. den.* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), the Court ruled that a carrier on the risk at the time of asbestos exposure should respond to the claim because of the continuous injury which occurred during such exposure. A different result was reached in *Eagle-Picher Industries Inc. v. Liberty Mut. Ins.,* 1st Cir., 682 F.2d 12 (1982), where the First Circuit Court of Appeals concluded that asbestosis "results" when it becomes clinically evident or manifest. While there

---

**2.** A later Superior Court decision, *Mancino v. Webb,* Del.Super., 274 A.2d 711 (1971) appears to suggest that recovery for a parent's mental distress might be sustainable even where the parent was outside the path of injury. Although the Court ruled that there was no factual basis for such a claim, it relied upon authorities which require either an accompanying physical injury or a malicious interference with the parental relationship.

is no Delaware decision which directly addresses the question of when an asbestos claim is considered to have accrued, the Delaware Supreme Court's acceptance of the last carrier rule, and its underlying rationale in *Alloy Surfaces, supra,* is a strong indication that a manifestation approach is likely to find local acceptance.

Asbestosis is an injurious process which results from the inhalation of asbestos fibers into the lungs, causing tiny subclinical insults to the lung tissue. If the lungs cannot expel the foreign bodies, over a period of prolonged exposure a fibrous tissue formation results and may lead to severe lung impairment. Clinical symptoms may not be observable until after many years of exposure, and disability may progress even after exposure has ceased. Lung cancer and mesothelioma, also asbestos related industrial ailments, share a similar latency. *Eagle-Picher Industries, Inc., supra.* The nature of the asbestos related injury, whether considered on an exposure or a manifestation basis is clearly incompatible with the traumatic event requirement for recovery of mental anguish under *Robb.*

Even where the zone of danger requirement has been rejected, recovery for mental anguish for the distress of witnessing a spouse's development of asbestosis has been denied. *Amader v. Johns-Manville Corp.,* E.D.Pa., 514 F.Supp. 1031 (1981) ("predicting" Pennsylvania law). Similarly, a parent has been denied recovery for witnessing a child's injuries manifested over a considerable period of time on the ground that to extend bystander recovery to such limits is so "burdensome as to transcend a reasonable degree of culpability." *Amodio v. Cunningham,* Conn.Supr., 182 Conn. 80, 438 A.2d 6, 12 (1980).

■ In judging the merits of a motion to dismiss for failure to state a claim, all well-pled facts are assumed to be true. *Kofron, supra; Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del.Supr., 372 A.2d 168 (1976). A complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably

conceivable set of circumstances susceptible of proof. *Diamond State Tel. Co. v. University of Delaware,* Del.Supr., 269 A.2d 52 (1970). But even under those liberal standards the claims of the plaintiff-wives for bystander recovery do not suffice to state causes of action cognizable under Delaware law. The allegation of an identifiable traumatic event or accident is an essential component of such claims. To permit a claim for mental anguish based on observation of an illness of uncertain causation and which may manifest itself over months or years would introduce a nebulous theory of recovery into a field of tort law already characterized by uncertainty and speculation.

Finally, there remain for consideration the mental anguish claims of the wives for apprehension. These claims include an allegation which the bystander claims lack: a physical nexus with asbestos fiber through the handling of their husbands' clothing. But defendants contend a further essential element for recovery has not been alleged—a present physical manifestation of the fear of future harm.

■ Fright alone unaccompanied by physical results is insufficient to warrant recovery. *Robb, supra.* Plaintiffs rely upon two decisions almost 100 years apart which support recovery for mental anguish caused by the apprehension that future physical harm will occur. In *Warner v. Chamberlain,* Del.Super., 30 A. 638 (1884), the plaintiff was permitted to recover for the fear that rabies would be contracted after a dog bite. But in *Warner* the apprehension claim was based upon an underlying claim for physical injuries. Closer to the mark is plaintiffs' reliance upon *Plummer v. United States,* 3rd Cir., 580 F.2d 72 (1978) which upheld an apprehension claim under the Federal Tort Claims Act by eight inmates of a federal prison who were exposed to active tuberculosis and feared contracting the disease. Applying Pennsylvania law, the Court held that if impact were required, the invasion of the body by tubercle bacilli satisfied that requirement. Objective skin tests had corroborated the pres-

ence of such bacilli thus "assuring that the danger perceived by plaintiff was not imaginary" (580 F.2d 76).

■ Here there is no assertion by the plaintiff-wives that asbestosis fibers are physically present in their bodies. They offer speculation based upon the standard etiology of asbestos-related ailments but the absence of physical manifestation renders their claims wholly subjective. In *Plummer,* the presence of tuberculosis bacilli not only satisfied the requirement of physical nexus in origin but that of physical result as well. If it be assumed that plaintiffs can here establish a physical nexus for the origin of their claims through contact with asbestos fibers, without a physical result there is no basis to entertain their claim that a future harm will occur. These claims are thus reduced to fear of future asbestos related harm without a demonstrable physical change in bodily condition. Such a claim is not compensable. *Tysenn v. Johns-Manville Corp.,* E.D.Pa., 517 F.Supp. 1290 (1981) (applying New Jersey law).

■ While the focus for rejection of the bystander and apprehension claims of the plaintiff-wives has been the lack of a demonstrable physical nexus either to the event or to the harm, there is an additional concern which suggests that such claims should not be entertained. In order to fix liability for any tortious act it must be established that the harm was reasonably forseeable from the defendant's viewpoint. To the extent that recent developments in this area have led to the relaxation, if not total elimination, of a physical nexus to the tortious act or a proof of a tangible result, the extent of a defendant's duty to foresee the consequences of his act becomes limitless. It is true that scientific and medical advances have permitted proof of psychic injury to an extent not previously imagined and the elimination of the impact rule is certainly a desirable result. But as Dean Prosser, an advocate of the recognition of claims for emotional distress, notes, safeguards in the form of physical results and relationship should be established. Even where such restrictions appear arbitrary they are necessary in order to place some limits on the open ended liability of a negligent defendant. Prosser, Torts (4th Ed.) § 54, p. 334–335.

### III

In summary, the motion to dismiss by Haveg and du Pont directed to the claims of the plaintiff-employees for lost causes of action and the claims of the plaintiff-wives for loss of consortium and mental anguish is granted on the ground that such claims do not state cognizable causes of action. The motion to dismiss asserted by the supplier-defendants is granted with respect to the claims for lost causes of action with leave to amend in conformity with the requirements of Superior Court Civil Rule 9(b). The motion of the supplier-defendants to dismiss the mental anguish claims of the plaintiff-wives is granted.

IT IS SO ORDERED.