# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ENVOLVE PHARMACY SOLUTIONS, INC., ET AL, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. N19C-12-214 PRW CCLD |
| RITE AID HDQTRS. CORP. AND RITE AID CORP., | ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: October 16, 2020
Decided: January 15, 2021

## MEMORANDUM OPINION AND ORDER

*Upon Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corp.'s
Motion to Dismiss*,
**GRANTED in part, DENIED in part**.

Alexandra M. Cumings, Esquire, Karen Jacobs, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Jerome P. DeSanto, Esquire, Christopher Flynn, Esquire, Keith J. Harrison, Esquire, Daniel W. Wolff, Esquire, CROWELL & MORING LLP, Washington, D.C., *Attorneys for Plaintiffs Envolve Pharmacy Solutions, Inc., et al.*

Corinne Elise Amato, Esquire, PRICKETT, JONES & ELLIOT, P.A., Wilmington, Delaware; Jordan Z. Dillion, Esquire, SHOOK, HARDY & BACON L.L.P., Kansas City, Missouri; Thomas J. Sullivan, Esquire, SHOOK, HARDY & BACON L.L.P., Philadelphia, Pennsylvania, *Attorneys for Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corp.*

**WALLACE, J.**

This dispute between the plaintiff group of health insurance and pharmacy benefit companies (collectively "Centene Entities")[1], and the defendant pharmacy Rite Aid Headquarters Corporation and Rite Aid Corporation (collectively "Rite Aid"), centers on the proper definition of Usual and Customary Price ("U&C Price") in certain operative agreements between them. The Centene Entities allege that Rite Aid fraudulently misrepresented the benchmark prices it charged customers for pharmaceuticals, so as to get higher payments from the Centene Entities than Rite Aid is entitled to under their 2003 and 2013 Contracts. The Centene Entities allege that the mechanism of fraud was to quote an inflated sticker price that Rite Aid customers never paid, while charging a discount price to holders of customer loyalty cards from its Rx Savings Card ("RSC") Program.

The Centene Entities' Complaint alleges that in reporting the U&C Price of the pharmaceuticals sold, Rite Aid failed to include the discounted prices offered through its RSC. The Centene Entities characterize the RSC as a simple shopper discount card, without any fees or membership requirements. The Centene Entities allege that Rite Aid used this RSC pricing to overstate the sticker prices of its pharmaceuticals. Not only did these actions allegedly breach contractual agreements

---

[1]    The plaintiffs in this case are dozens of entities and subsidiaries, as discussed below. For ease of understanding, they will be collectively referred to as "the Centene Entities."

between the parties, they also caused the Centene Entities to overpay Rite Aid an unspecified sum that could be in the millions of dollars.

Before the Court is Rite Aid's Motion to Dismiss under Superior Court Civil Rule 12(b)(6). Having considered the record and the parties' arguments, the Court concludes that some claims against Rite Aid should be dismissed, while other claims survive.

The Centene Entities have pled facts that if proven would show that a shopper using the RSC is obtaining a discount and is still a non-contracted buyer. So Rite Aid's motion to dismiss based on the definition of U&C Price and under breach-of-contract pleading requirements is denied.

Rite Aid's argument that the statute of limitations bars recovery for any overpayments for which the Centene Entities were on inquiry notice is a fact-specific inquiry that cannot be resolved at this procedural stage. Accordingly, the Court denies Rite Aid's request for dismissal brought on statute of limitations grounds.

While the Centene Entities have pled fraud with the particularity required under Superior Court Civil Rule 9(b), it fails to plead injury from the fraud separate from its breach-of-contract claims. The Court, therefore, grants Rite Aid's motion to dismiss as to the Centene Entities' fraud claim.

Finally, because the 2003 and 2013 Contracts disclaim third-party beneficiary enforcement, Rite Aid's motion to dismiss the breach-of-contract claims by the

non-Envolve parties is granted. But because they cannot sue as third-party beneficiaries under the contract, there is no bar against the Centene Entities—other than Envolve—from seeking to recover under an unjust enrichment theory. Thus, the Court denies Rite Aid's motion to dismiss as to the Centene Entities' unjust enrichment claim.

In sum, Rite Aid's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

## I.  FACTUAL BACKGROUND

### A.  THE PARTIES

The plaintiffs in this suit are dozens of entities under common ownership of nonparty Centene Corporation. There are two major groupings of these subsidiary plaintiffs. The first are the "Centene Health Plans" consisting of 48 subsidiaries; the second are the "Health Net Plans" consisting of nine subsidiaries.[2] Both groups of plaintiff subsidiaries are third-party payors that offer both commercial and government-sponsored plans, including pharmaceutical benefits, to members.[3]

The remaining two plaintiff entities, also Centene Corporation subsidiaries, are Envolve Pharmacy Solutions, Inc. ("Envolve") and Health Net Pharmaceutical

---

[2]  Compl. ¶¶ 11-12, Dec. 23, 2019 (D.I. 1).

[3]  *Id.*

Services ("HNPS").[4]  Envolve, formerly known as US Script, was the entity that entered into the disputed 2003 and 2013 Contracts.  The role of these entities was to "facilitate transactions between the Health [Net] Plans and pharmacies by processing pharmaceutical claims and reimbursing the pharmacies. . . . The Health [Net] Plans, in turn, reimburse Envolve and HNPS for the claims that they pay on their behalf."[5]

Rite Aid is a chain of pharmacies comprising of more than 2,600 retail locations in the United States that fill hundreds of millions of prescriptions annually.[6] Rite Aid is an in-network pharmacy for the Centene Health Plans and Health Net Plans, meaning that the individuals with health plans from those entities can purchase pharmaceuticals at Rite Aid pharmacies under the plans' coverage.[7]

**B. THE AGREEMENTS AND DEFINITION OF "USUAL AND CUSTOMARY PRICE"**

In 2003, the parties entered into a Participating Pharmacy Agreement ("2003 Contract").[8]  A continuing feature of that and all subsequent contractual instruments governing their relationship is that Rite Aid would bill the lesser of two

---

[4]  *Id.* ¶¶ 14-15.

[5]  *Id.* ¶ 16.

[6]  *Id.* ¶ 20.

[7]  *Id.* ¶ 19.

[8]  *Id.* ¶ 39 (contract was entered into with US Scripts, predecessor of Envolve).

prices—the price negotiated by the various plans or the U&C Price.[9] The contracts also provided for Rite Aid to report its U&C Price to Envolve.[10] The 2003 Contract defines U&C Price as "[t]hose amounts which participating Pharmacy normally charges its private pay patients for comparable Pharmaceutical Services and as may be provided to Patient Beneficiaries of a Third Party Payor."[11]

In 2013, the parties entered into a second Participating Party Agreement ("2013 Contract"), altering the definition of U&C Price to "the lowest price the Pharmacy would charge to a non-contracted, cash-paying customer with no insurance for an identical Pharmaceutical Service on the date and at the location that the product is dispensed, inclusive of all applicable discounts, promotions, or other offers to attract customers."[12]

## C. Rx Savings Plan

In 2006, Rite Aid began facing strong price pressure from "big box" retailers moving into the retail pharmaceutical space.[13] In response to those retailers'

---

[9] *Id.* ¶¶ 40, 42.

[10] *Id.*

[11] Tr. Aff. Ex. A § 1.7, Feb. 28, 2020 (D.I. 30).

[12] Compl. ¶ 41; Tr. Aff. Ex. B. § 1(U) (D.I. 30).

[13] Compl. ¶ 29.

competitive pricing, Rite Aid created the Rx Savings Club Program in 2008.[14] The RSC is a membership program for which enrollment and continued membership have no requirements, fees, or delay between application and full availability of benefits.[15]

Following the creation of the RSC, Rite Aid reported only the non-RSC price of pharmaceuticals as its U&C Price.[16] So where the RSC price was lower than the Centene Entities' negotiated price, Rite Aid obtained larger payments than if the RSC price had been reported as the U&C Price.[17]

### D. PAYMENT SCHEME AND DIVERGENCE IN PAYMENTS

All Centene Entities handle payments through non-party Caremark as a prescription benefit manager.[18] The Health Net Plans and HNPS have used Caremark since 2008, while the other Centene Entities have used Caremark since 2016.[19] A Rite Aid retail customer makes a copayment at the point-of-sale pharmacy when she purchases pharmaceuticals.[20] The Centene Entities then report the sale,

---

[14]  *Id.* ¶¶ 28-29.

[15]  *Id.* ¶ 30.

[16]  *Id.* ¶ 43.

[17]  *Id.* ¶¶ 44-46.

[18]  *Id.* ¶ 48.

[19]  *Id.* ¶ 49.

[20]  *Id.* ¶ 51.

the customer's health insurance information, and the U&C Price of the pharmaceutical to Caremark.[21] Caremark then invoices a payment from the health insurer to Rite Aid of the lesser of the reported U&C Price and the insurer-negotiated price, excluding the money already paid by the customer at point-of-sale.[22]

Where the Centene Entities had negotiated a lower price than the RSC price, no change resulted from the divergence between RSC price and reported U&C Price.[23] Where the RSC price was lower than the negotiated price, each prescription sale might result in a several-dollar-higher invoice than had the RSC price been reported as the U&C Price.[24]

Rite Aid reported the non-RSC price as the U&C Price in all disclosures accessible to the Centene Entities.[25] The Centene Entities learned of the divergence between the RSC and U&C Prices some time before October 18, 2018. And that's when they contacted Rite Aid about this dispute.[26] As of the Centene Entities' filing

---

[21]  *Id.*

[22]  *Id.*

[23]  *Id.* ¶ 57.

[24]  *Id.* ¶ 58.

[25]  *Id.* ¶¶ 61-62.

[26]  *Id.* ¶ 68.

of their complaint here, Rite Aid continued to represent the non-RSC sticker price as the U&C Price for pharmaceuticals.[27]

## II. THE PARTIES' CONTENTIONS

### A. THE CENTENE ENTITIES' CLAIMS

The Centene Entities put six counts in its Complaint. In "Count 1," the Centene Entities bring a claim for fraud. They allege that Rite Aid intentionally misrepresented the RSC price as the U&C Price, inflating millions of claims paid by the Centene Entities.[28] This misrepresentation, they say, caused the Centene Entities to overpay an amount determinable at trial, but not less than 50 million dollars.[29]

In "Count 2" and "Count 4" of the Complaint, the Centene Entities allege breach of the 2003 Contract and the 2013 Contract relating to Envolve.[30] The Centene Entities aver that Rite Aid's alleged submission of inflated pricing caused Envolve to overpay Rite Aid, breaching both the 2003 and 2013 Contracts and entitling them to compensatory damages.[31]

---

[27] *Id*. ¶ 69.

[28] *Id*. ¶ 71.

[29] *Id*. ¶ 86 (this number includes punitive damages).

[30] *Id*. ¶¶ 87-94, 110-17.

[31] *Id*. ¶ 94, 117.

In "Count 3" and "Count 5" of the Complaint, the Centene Entities set forth breach-of-contract claims for the 2003 Contract and 2013 Contract relating to the Centene Health Plans as third-party beneficiaries.[32] In these counts, the Centene Entities complain that Rite Aid's alleged submission of inflated pricing caused Envolve to overpay Rite Aid, in turn denying the Centene Health Plans the rights and benefits entitled to them under the 2003 and 2013 Contracts.[33] The Centene Entities insist that such breaches entitle the Centene Health Plans to compensatory damages in an amount determinable at trial.[34]

In "Count 6" of the Complaint, the Centene Entities bring a claim for unjust enrichment as Rite Aid's alleged inflation in billing violated its quasi-contractual relationship.[35]

### B. DEFENDANTS' MOTION

Rite Aid seeks wholesale dismissal of the Complaint. First, Rite Aid argues that the three-year statute of limitations, under 10 Del. C. § 8106, bars all counts of the action.[36]

---

[32] *Id.* ¶¶ 95-109, 118-32.

[33] *Id.*

[34] *Id.* ¶¶ 109, 132.

[35] *Id.* ¶¶ 133-37.

[36] Rite Aid's Op. Br. at 18, Feb. 28, 2020 (D.I. 29).

Second, they argue that Count 1, the Centene Entities' fraud claim, should be dismissed for failure to adequately plead each necessary element with particularity.[37] Rite Aid asserts that the Centene Entities are required to plead: (1) false representation; (2) Rite Aid's knowledge or belief that the representation was false, or made with reckless indifference to the truth; (3) an intent to induce the aggrieved party to act or to refrain from acting; (4) that the aggrieved party's action or inaction was taken in justifiable reliance upon the representation; and (5) damages caused by such reliance.[38] Rite Aid says that the Centene Entities have failed to identify which entity it allegedly defrauded, or to describe any knowledge of falsity.[39]

Third, Rite Aid argues that the economic loss doctrine bars the Centene Entities' claim for fraud. It argues that this tort claim requires pleading conduct that is separate and distinct from the conduct constituting breach-of-contract.[40] Rite Aid says that because the Centene Entities do not allege any fraud in the formation or inducement of the contractual relationship, this fraud claim cannot survive the application of the economic loss doctrine.[41]

---

[37] *Id*. at 24.

[38] *Id*. (citing *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008)).

[39] *Id*. at 24-25.

[40] *Id*. at 28.

[41] *Id*. at 28-29.

Fourth, Rite Aid asserts that the Centene Entities fail to state a claim for breach of contract.[42] Rite Aid argues that the Centene Entities must plead "(1) the existence of a contract; (2) a violation of duty under the contract; and (3) damages resulting from the violation."[43] Rite Aid claims that the Centene Entities fail to plead how Rite Aid breached its duties under either the 2003 Contract or the 2013 Contract, nor do they elaborate any suffered losses.[44]

Fifth, Rite Aid insists that all counts must be dismissed because the prices offered under the RSC do not satisfy the definition of U&C Price under the 2013 Contract.[45] Rite Aid argues that because the RSC is a membership program, it isn't "non-contracted" under the 2013 Contract definition of U&C Price.[46] Due to this, Rite Aid asserts it had no duty to factor these purchases into the U&C Price calculation when conducting its reporting.[47]

Sixth, Rite Aid argues that both the 2003 Contract and the 2013 Contract expressly bar third-party beneficiaries from this action so Counts 3 and 5 should be

[42] *Id*. at 30.

[43] *Id*. (citing *Carlson v. Hallinan*, 925 A.2d 506, 529 (Del. Ch. 2006)).

[44] *Id*. at 30-31.

[45] *Id*. at 32.

[46] *Id*.

[47] *Id*.

dismissed.[48] According to Rite Aid, no evidence exists to show that the parties'

agreements intended to create third-party beneficiary status for the Centene Health

Plans.[49] Further, Rite Aid says that the 2003 Contract fails to designate any of the

third-party plaintiffs as beneficiaries and the 2013 Contract expressly disclaims any

third-party beneficiary rights.[50]

Seventh, Rite Aid suggests that the unjust enrichment claim must be dismissed

because an express contract covers the same subject matter.[51] It argues that a claim

for unjust enrichment is unrecoverable if a contract governs the relationship between

the contesting parties that gives rise to the claim.[52] According to Rite Aid, because

the 2003 Contract and the 2013 Contract govern the relationship between the parties

to this case, the unjust enrichment claim should be dismissed.[53]

Lastly, Rite Aid asserts that the voluntary payment doctrine bars this action.[54]

It argues that the Centene Entities voluntarily paid the claims it now disputes with

---

[48]   *Id*. at 34.

[49]    *Id*. at 34-35.

[50]   *Id*. at 35; Tr. Aff. Ex. B, § 11(D).

[51]   Rite Aid's Op. Br. at 36.

[52]   *Id*. (citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012)).

[53]   *Id*.

[54]   *Id*. at 37.

full knowledge of its rights and the facts underlying its claims.[55]  And so, Rite Aid says, the Centene Entities cannot recover that payment feigning misapprehension of the legal rights and obligations of the payee.[56]

## III.  STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[57]  Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[58]

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[59]

---

[55]  *Id.*

[56]  *Id.*

[57]  *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Superior Court Civil Rule 12(b)(6)).

[58]  *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[59]  *Id.* (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

-13-

## IV. CHOICE OF LAW

Delaware law applies to all counts in this dispute. Delaware's choice of law analysis has three steps. First, it must be determined whether the parties made an effective choice of law clause through their contract.[60] Second, if there is no choice of law provision in the parties' contract, it must be determined whether an actual conflict exists between the laws of the different states each party seeks to apply.[61] Third, if an actual conflict exists, the "most significant relationship test" should be analyzed to determine which state's law applies.[62]

The parties agree that Counts 2 through 5 are governed by Delaware substantive law as provided for in the 2013 Contract.[63] But the 2013 Contract is silent as to the law governing the unjust enrichment claim (Count 6). Because the parties' agreement does not dictate the governing law as to this claim, the Court must consider whether a conflict between Delaware and California law exists. Both states' laws bars recovery on an unjust enrichment claim that is within the subject

---

[60] *Pfizer v. Arch Ins. Co.*, 2019 WL 3306043, at *6 (Del. Super. Ct. Jul. 23, 2019).

[61] *Id.*

[62] *Id.*

[63] Rite Aid's Op. Br. at 16; Centene Entities' Opp'n Br. at 18, Apr. 15, 2020 (D.I. 39). *See* Tr. Aff. Ex. B § 11(F) (the Contracts "shall be construed, interpreted and enforced in accordance with federal law and the laws of the state of Delaware.").

matter of an express contract.[64]   The parties agree that no such conflict exists regarding this rule and say that the Court need not engage in a choice of law analysis as to Count 6.[65]

Finally, the Centene Entities insist that the "most significant relationship test" requires its fraud claim (Count 1) to be analyzed under California law.[66]  But in their analysis the Centene Entities bypass the second step of Delaware's choice of law analysis.  Before employing the "most significant relationship test," the Court must first determine whether the competing states' laws are in actual conflict.  The question is simple: "does the application of the competing laws yield the same result?"[67]  The answer here is yes.

Accordingly, Delaware law is the sole body of law applicable to resolve all counts in this dispute.

---

[64]   *Khushaim v. Tullow, Inc.*, 2016 WL 3594752, at *8 (Del. Super. Ct. June 27, 2016); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009); *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1078 (S.D. Cal. 2010) (citing *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).

[65]   Centene Entities' Suppl. Letter at 3, Oct. 16, 2020 (D.I. 58); Rite Aid's Suppl. Letter at 3-4, Oct. 16, 2020 (D.I. 60).

[66]   Centene Entities' Opp'n Br. at 20-22.

[67]   *Laugelle v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164, at *2 (Del. Super. Ct. Oct 1, 2013).

-15-

## V. DISCUSSION

### A. THE RSC IS A DISCOUNT THAT MEETS THE U&C PRICE DEFINITION IN BOTH THE 2003 CONTRACT AND 2013 CONTRACT.

Rite Aid's contention is that the RSC prices do not fit within the definition of U&C Price under either the 2003 Contract or the 2013 Contract, and therefore are not to be included in the calculation of U&C Price.[68] When a term is defined in a contract, and that definition is unambiguous, that definition controls.[69] Here, the definition of U&C Price is set forth in both the 2003 Contract and the 2013 Contract, and the plain words thereof control.

The 2003 Contract defines U&C Price as "[t]hose amounts which participating Pharmacy normally charges its private pay patients for comparable Pharmaceutical Services and as may be provided to Patient-Beneficiaries of a Third Party Payor."[70] Nowhere in either its opening or its reply brief does Rite Aid say this definition excludes the RSC. 'Private pay' unambiguously refers to customers paying for their own pharmaceuticals, without relying on third-party entities (*i.e.* insurers) to pay any part of their pharmaceutical purchase.

---

[68] Rite Aid Op. Br. at 32.

[69] *Radio Corp. of America v. Philadelphia Storage Battery Co.*, 6 A.2d 329, 334 (Del. 1939).

[70] Tr. Aff. Ex. A § 1.7.

Instead, Rite Aid relies on the 2013 Contract's definition to argue that RSC prices are excluded from the U&C Price definition.[71] In that contract, U&C Price is "the lowest price the Pharmacy would charge to a non-contracted, cash-paying customer with no insurance for an identical Pharmaceutical Service on the date and at the location that the product is dispensed, inclusive of all applicable discounts, promotions, or other offers to attract customers."[72]

Rite Aid says that the RSC is a contract between the pharmacy and the customer—not a discount.[73] Focusing then on the term "non-contracted" found in the 2013 Contract definition, Rite Aid insists it had no duty to add the RSC pricing into its U&C Price calculation.[74]

Not surprisingly, the Centene Entities argue that the 2013 Contract definition of U&C Price favors them as it includes "all applicable discounts, promotions, or other offers to attract customers."[75] This phrasing, they say, covers Rite Aid's RSC prices because the RSC has no fees or membership requirements and is given to all

---

[71]  Rite Aid Op. Br. at 32.

[72]  Tr. Aff. Ex. B. § 1(U).

[73]  Rite Aid's Op. Br. at 32-33.

[74]  *Id.*

[75]  Centene Entities' Opp'n Br. at 36; Tr. Aff. Ex. B. § 1(U); Compl. ¶ 42.

customers upon request.[76]

"In legal contemplation a contract is an agreement between two or more persons, upon sufficient consideration, to do or not to do a particular thing."[77] The Complaint alleges, and at this procedural stage the Court must accept as true, that the RSC has no fees or membership requirements and is provided to all customers immediately upon request.[78] The Centene Entities thus plausibly allege that the RSC is not founded on any consideration, and is indeed a discount program.[79] Rite Aid will have the opportunity to prove that the RSC is an actual contract between the pharmacy and customers and not a discount program via discovery or trial. But the Court can't buy that now. And so, at this threshold pleading stage, the Court must reject Rite Aid's dismissal request on these grounds.

### B. THE FRAUDULENT CONCEALMENT INQUIRY BARS DISMISSAL BASED ON THE THREE YEAR STATUTE OF LIMITATIONS AT THIS PROCEDURAL STAGE.

While both parties agree that 10 *Del. C.* § 8106(a)'s three-year statute of limitations applies to this action, the Centene Entities seek to avoid this bar by

---

[76] Centene Entities' Opp'n Br. at 36; Compl. ¶ 30.

[77] *Speakman v. Price*, 80 A. 627, 630 (Del. Super. Ct. 1911).

[78] Compl. ¶ 30.

[79] *Id.*

alleging fraudulent concealment.[80]   The fraudulent concealment inquiry here is fact- specific and unresolvable on this motion to dismiss.

Dismissal based on statute of limitations is "appropriate only if it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[81]  The Centene Entities filed its Complaint more than eleven years after Rite Aid unveiled its RSC.[82] Because the RSC is still ongoing, and Rite Aid continues to exclude RSC discount prices from its calculation of U&C Price, at least some transactions at issue are timely.  Therefore section 8106(a) certainly does not bar recovery entirely.

An applicable statute of limitations may be overcome when a defendant has fraudulently concealed information from a plaintiff that was necessary to put him on notice of the truth.[83]  To invoke the fraudulent concealment protection, the aggrieved party must show two elements: (1) that the defendant acted in a manner to conceal

---

[80]   Rite Aid's Op. Br. at 2 (citing Del. Code Ann. tit. 10, § 8106(a) (2018)); Centene Entities Opp'n Br. at 49-50.

[81]   *King Const., Inc. v. Plaza Four Realty, LLC*, 976 A.2d 145, 151-52 (Del. 2009) (quoting *Gantler v. Stephens*, 965 A.2d 695, 703 (Del. 2009)).

[82]   Compl. (D.I. 1) (filed December 23, 2019).

[83]   *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).

-19-

the wrongful action from the plaintiff, and (2) the defendant knew about the alleged wrongfulness of their actions.[84]

Rite Aid's reporting of U&C Prices exclusive of RSC discounts on the forms reporting pharmaceutical transactions were affirmative acts that concealed information from the Centene Entities. The Centene Entities plead that Rite Aid had the requisite knowledge and intent to report inflated U&C Prices.[85]

But Rite Aid protests there was no fraudulent concealment here. Because of its good faith belief that RSC discounts need not be factored into the U&C Price, Rite Aid says there is no proof of their knowledge that they were concealing an alleged wrong.[86] Whether Rite Aid acted on some good faith belief or there exist evidence that they had no knowledge of the concealment charged can't be determined on the pleadings (and permissible inclusions) available now.

Additionally, Rite Aid suggests that the distribution of circulars advertising the RSC discount prices made the information generally available to the Centene Entities, putting them on notice of such pricing discrepancies.[87] True, the tolling of

---

[84] *Washington House Condominium Assoc. of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *18 (Del. Super. Ct. Aug. 8, 2017).

[85] Compl. ¶ 59.

[86] Rite Aid's Op. Br. at 26-27.

[87] *Id*. at 10.

the statute of limitations due to fraudulent concealment lasts only until "such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury."[88] And the availability of public pricing material against which the Centene Entities could have cross-checked Rite Aid's self-reported prices may well go to this inquiry. But determining when a person of ordinary intelligence and prudence would have audited the transaction data Rite Aid reported in the way Rite Aid now claims should and could have occurred is not a question amenable on a motion to dismiss.[89]

In short, all of these arguments by Rite Aid require specific facts not yet available and inquiries never engaged under Rule 12(b)(6).

## C. THE CENTENE ENTITIES PLEAD FRAUD WITH ADEQUATE PARTICULARITY BUT FAIL TO PLEAD A SEPARATE INJURY FOR FRAUD.

Our Civil Rule 9(b) states "all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." To meet Rule 9(b)'s heightened pleading standard, a party must present the following elements: (1) the time, place, and contents of the

---

[88] *In re Nine Systems Corp. Shareholder Litig.*, 2013 WL 4013306, at *11 (Del. Ch. Jul. 31, 2013).

[89] *See Thomas v. Capano Homes Inc.*, 2015 WL 1593618, at *2 (Del. Super. Ct. Apr. 2, 2015) (calling an evaluation of inquiry notice "premature" at the motion to dismiss stage).

false representation, (2) the facts misrepresented, (3) the identity of the party making such misrepresentations, and (4) what the party gained by making such misrepresentation.[90] "Put another way, Plaintiff must allege with sufficient particularity the 'who, what, where, when and how' of the fraud."[91]

Here, the Centene Entities' Complaint covers the "who, what, where, when and how: of the fraud."[92] The "who" pleaded is Rite Aid.[93] The "what" is the inflation of the U&C Prices on the claim submission forms.[94] The "when" alleged is every time, starting in September 2008, Rite Aid reported higher prices than the RSC prices as the U&C Price.[95] The "where" includes every location Rite Aid's misrepresentations were made and those locations where they were received.[96] The Centene Entities plead the "how" occurred in two manners. The first, direct misrepresentations, in which Rite Aid misrepresented the U&C Prices directly to

---

[90] *Nutt v. A.C. & S. Inc.*, 466 A.2d 18, 23 (Del. Super. Ct. 1983); *Spanish Titles, Ltd. v. Hensey*, 2005 WL 3981740, at *5 (Del. Super. Ct. Mar. 30, 2005).

[91] *State Dept. of Labor Div. of Unemployment Ins. v. Pasquale*, 2015 WL 5461540, at *3 (Del. Super. Ct. Sept. 17, 2015).

[92] *Id.*

[93] Compl. ¶ 18.

[94] *Id.* ¶ 55.

[95] *Id.* ¶¶ 32, 35.

[96] *Id.* ¶¶ 61, 76-78; *see* Centene Entities' Opp'n Br. at 25.

-22-

Envolve, and the second, indirect misrepresentations, in which Rite Aid made its misrepresentations of inflated U&C Prices to Caremark, who then invoiced Envolve for those amounts paid.[97]  Further, the Complaint lists specific drugs on specific days, the negotiated price, the putative U&C Price, and the lower RSC price, and the resulting overbilling per prescription.[98]  These disclosures satisfy the particularity requirement of Rule 9(b).[99]

So where does the Centene Entities' fraud claim fail?  Well, it pleads no separate injury derived from the fraud alleged.

A contract creates reciprocal duties, and where those duties overlap preexisting common-law tort duties, "it is presumed that the parties to the transaction have allocated the risk of product nonperformance through the bargaining process,"[100] supplanting the common law of torts.  In turn, one seeking recovery in both fraud and breach-of-contract must plead a different injury inflicted by the tort than is accounted for by the duties under the contract.  Failure to do so invites

---

[97]  Compl. ¶¶ 51-54, 73; *see* Centene Entities' Opp'n Br. at 25-26.

[98]  Compl. ¶ 46.

[99]  *See Nutt*, 466 A.2d at 23 ("It may not be necessary that all evidence of fraud within the knowledge of the plaintiffs be disclosed short of discovery but it is essential that the precise theory of fraud with supporting specifics appear in the complaint.").

[100]  *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200 (Del. 1992).

dismissal of the concomitant fraud claim.[101]  And a bald plea for punitive damages is insufficient to satisfy the separate injury requirement.[102]

The Centene Entities allege nothing more than Rite Aid's failure of a contractual duty to report the U&C Price, leading to injury through inflating the payments due under the contract.  The Centene Entities allege no injury or damage outside of the contract itself.  Even construed in the light most favorable to the Centene Entities, the fraud count fails to allege the required separate injury.

**D. ENVOLVE SUFFICIENTLY STATES A CLAIM FOR BREACH-OF-CONTRACT (COUNTS 2 & 4) AGAINST RITE AID.**

An action for a breach-of-contract requires three elements: (1) a contractual obligation, (2) a violation of duty under the contract by the defendants, and (3) resulting damages to the plaintiff.[103]  Rite Aid argues that the Centene Entities fail to plead what duties under the contract were breached and what injuries resulted by such breach.[104]  Not so.[105]

---

[101]  *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *9 (Del. Super. Ct. Jun. 6, 2012).

[102]  *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017).

[103]  *Carlson v. Hallinan*, 925 A.2d 506, 528-29 (Del. Ch. 2006).
[104]  Rite Aid's Op. Br. at 30-31.

[105]  *See* Compl. ¶¶ 42, 87-94, 110-17.

In its Complaint, the Centene Entities allege that under both the 2003 Contract and the 2013 Contract, Rite Aid had an obligation to accurately report and submit the U&C Prices charged in each claim submitted to Envolve for payment.[106] And the Complaint charges that Rite Aid breached this obligation each time it failed to report the RSC price as the U&C Price on a claim submitted to Envolve for payment.[107] Envolve, holding up its contractual duties, was obligated to and made payments to Rite Aid, the measure of which was based in part upon the U&C Prices submitted.[108] The Centene Entities say that Rite Aid's repeated material breaches (millions of such transactions occurred), coupled with Rite Aid's intentional failure to accurately submit the U&C Price resulted in massive overpayments causing them economic injury.[109]

The Centene Entities have identified the obligation, breach of duty, and resulting injury required to sufficiently plead their breach-of-contract claims.

---

[106] *Id.* ¶¶ 89, 112. *See* Tr. Aff. Ex. B. § 4(D) ("Pharmacy must submit all required information for the claim, which includes but is not limited to. . . the Pharmacy's Usual and Customary charge of the medication dispensed."); *see also id.* § 4(F) (reciting the Rite Aid's certification and representation that the information in §4(D) was accurate).

[107] Compl. ¶¶ 90, 113.

[108] *See* Tr. Aff. Ex. B. § 5(A).

[109] Compl. ¶¶ 94, 117.

**E. THE CENTENE ENTITIES' THIRD-PARTY BENEFICIARY CLAIM (COUNTS 3 & 5) AND UNJUST ENRICHMENT CLAIM (COUNT 6) ARE ALTERNATIVE THEORIES OF RECOVERY FOR THE SAME INJURY.**

When a claim for unjust enrichment is within the same subject matter of an express contract, recovery is governed by that contract and a claim for unjust enrichment is unavailable.[110] The Centene Entities argue that Delaware allows parties to plead unjust enrichment claims alternatively to their breach-of-contract claims.[111] But pleading unjust enrichment in the alternative is generally only allowed "when there is doubt surrounding the enforceability or the existence of the contract."[112] Here, the validity of the 2003 and 2013 Contracts are not in question. So the Centene Entities' unjust enrichment claim is dismissed with respect to Envolve, the party to the Contracts.

Rite Aid argues that the existence of the 2003 and 2013 Contracts as express agreements bars recovery *by anyone* under an allegation of unjust enrichment.[113] But at the same time, Rite Aid disclaims any third-party beneficiary rights under the contracts.[114] The true question becomes not *whether* the facts the Centene Entities

---

[110] *See Kuroda*, 971 A.2d at 891.

[111] Centene Entities' Opp'n Br. at 47. *See Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLlP*, 2014 WL 6703980, at *28 (Del. Ch. Nov. 26, 2014).

[112] *Khushaim*, 2016 WL 3594752, at *8.

[113] Rite Aid Op. Br. at 36.

[114] *Id*. at 34.

plead state a cause of action, but precisely *which* of the Centene Entities might bring that unjust enrichment action under the facts here. If recovery is possible under the contract, the unjust enrichment claim is displaced.[115] While if the contract claim is disallowed then unjust enrichment remains available.[116]

"As a general rule, a nonparty to a contract has no legal right to enforce it."[117] This general rule yields to the enforceable rights of intended beneficiaries, so long as those beneficiaries are not incidental.[118] The test is satisfied when "conferring of a beneficial effect on such third party. . . [is] a material part of the contract's purpose."[119] The entire purpose of the 2003 and 2013 Contracts was to intermediate pharmaceutical purchase transactions for the other Centene Entities. Those transactions—the core of Envolve and Rite Aid's relationship—are indeed material.

As for the third-party beneficiaries involved in this matter, section 11(D) of the 2013 Contract expressly states: "[n]othing in this Agreement shall be construed as, or deemed to create, any right or remedy in any third party, and no third party

---

[115] *JCM Innovation Corp. v. FL Acquisition Holdings, Inc.*, 2016 WL 5793192, at *7 (Del. Super. Ct. Sept. 30, 2016).

[116] *ID Biomedical Corp. v. TM Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995).

[117] *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004).

[118] *Id.*

[119] *Id.* at *3 (quoting *Insituform of North America, Inc. v. Chandler*, 534 A.2d 257, 270 (Del. Ch. 1987)).

shall have any right or cause of action under this Agreement, including any Member, except as otherwise specifically provided herein." Absent this clause, the Centene Health Plans would satisfy the requirements for third-party beneficiary standing for breach-of-contract, disposing any claim by them for unjust enrichment. But, by the plain language of this clause, the Centene Health Plans cannot claim third-party beneficiary status under the contracts; they may, however, bring the quasi-contract claim of unjust enrichment.[120]

Still, Rite Aid says the Court should dissect the Centene Entities' unjust enrichment claim into three separate time periods and apply to the statute of limitations to each excised portion.[121] Rite Aid argues first that any unjust enrichment claim with respect to claim submissions occurring before December 23, 2016, is time barred by both Delaware's and California's statutes of limitations.[122] Rite Aid says then that any unjust enrichment accusation derived from claim submissions occurring between December 23, 2016, and December 23, 2017, is time barred by Delaware's statute of limitations.[123] But the Centene Entities' complaint

---

[120] *See Dorsey v. State ex rel. Mulrine*, 301 A.2d 516, 518 (Del. 1972) ("The implied, or quasi-contract, is one where the law will infer the existence of a contractual relationship without regard to the actual intention of the parties where circumstances are such that justice warrants a recovery as though there had been a promise or contract.").

[121] *See* Rite Aid's Suppl. Letter (D.I. 60).

[122] *Id.* at 2.

[123] *Id.* at 3-4; Rite Aid Op. Br. at 16-17.

doesn't separate its unjust enrichment claim into such time periods.[124] And this Court will not engage in such vivisection of otherwise healthy and well-pled claims now. At this motion to dismiss stage, it is simply too early to determine the specific dates to which each of the special claims relates and whether any potential tolling mechanism might apply.

Rite Aid's motion regarding the remaining non-Envolve Centene Entities' unjust enrichment claim is therefore denied.

### F. THE VOLUNTARY PAYMENT DOCTRINE DOES NOT BAR THE CENTENE ENTITIES' CLAIMS.

Rite Aid's request for dismissal based on the voluntary payment doctrine is denied. "The voluntary payment doctrine provides that 'where money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.'"[125] But no Delaware Court has imposed this doctrine as a bar to recovery on the basis of constructive, instead of actual, knowledge. Rite Aid argues that the payments at issue were made with full knowledge of the facts because the Centene Entities had access to the contents of

---

[124] *See* Compl. ¶¶ 1-69; 133-37.

[125] *Winshall v. Viacom Int'l, Inc.*, 2019 WL 960213, at *15 (Del. Super. Ct. Feb. 25, 2019) (quoting *Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *6 (Del. Super. Ct. Jul. 27, 2010)).

Rite Aid's published RSC pricing advertisements.[126] This argument fails to show that the Centene Entities had actual knowledge of the pricing discrepancies at issue in this case.

And even where this Court might apply the voluntary payment rule, it would not do so when the payor acted pursuant to "fraud, misrepresentation, or mistake of fact."[127] Indeed, our Supreme Court has observed that even when there is no accusation of misconduct on the part of the payee, "money paid under a mistake of fact may be recovered in equity under an unjust enrichment theory."[128]

---

[126] Rite Aid's Op. Br. at 37.

[127] *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1171 (Ill. 2005); *see also Nieves*, 2010 WL 2977966, at *6 (adopting "the thorough opinion of the Supreme Court of Illinois in *King v. First Capital Financial Services Corp.*").

[128] *Home Ins. Co. v. Honaker*, 480 A.2d 652, 653 (Del. 1984).

## VI. CONCLUSION

Rite Aid's Motion to Dismiss is hereby **GRANTED** as to the Centene Entities' fraud claim with its attendant prayer for punitive damages (Count 1), and as to the third-party beneficiaries' breach-of-contract claims (Counts 3 and 5). But the Motion to Dismiss is **DENIED** as to Envolve's breach-of-contract claims (Counts 2 and 4), and the remaining Centene Entities' (excluding Envolve) claim for unjust enrichment (Count 6).

**IT IS SO ORDERED.**

*Paul R. Wallace*

_____
Paul R. Wallace, Judge